**In re Edmund SOUSA, Mary Sousa, Debtors.**

**Bankruptcy No. 8201021.**

United States Bankruptcy Court, D. Rhode Island.

Feb. 8, 1985.

E. Lucius Zarlenga, Providence, R.I., for debtors.

John Boyajian, Boyajian, Coleman & Harrington, Providence, R.I., Trustee.

William H. Tucker, Boston, Mass., U.S. Trustee.

DECISION SUSTAINING DEBTORS' OBJECTION TO THE CHAPTER 13 TRUSTEE'S STATUTORY FEE

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the debtors' objection to the allowance to the trustee of the full statutory fee computed pursuant to 28 U.S.C. § 586(b). This controversy raises the issue, apparently of first impression, whether the Court may review the statutory compensation of a standing Chapter 13 trustee operating under the provisions of the United States Trustee Pilot Program, 28 U.S.C. §§ 581–589 and 11 U.S.C. §§ 1501 *et seq.* For the reasons discussed below, we conclude that in pilot as well as in non-pilot areas the court retains the authority and the responsibility to make determinations concerning the reasonableness of *all* awards, including the one now before the Court.

The relevant facts are as follows:[1] On December 9, 1982, the debtors filed a joint Chapter 13 petition. The plan was to be partially funded by the proceeds from the sale of two parcels of the debtors' real estate on Walnut Street, in East Providence, Rhode Island, which were covered

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rules 7052 and 9015.

by a blanket mortgage to Old Colony Co-operative Bank in the amount of $57,590. Both properties were sold in September 1983, for $35,291 and $23,080, respectively. The debtors turned over the total proceeds from both sales ($58,371) to the trustee, who in turn forwarded a check to the bank in the amount of $57,590, the balance due on the mortgage. The plan does not provide for the mortgage to be paid by the trustee, and the parties agree that the trustee's involvement in this transaction was not required. The trustee contends, however, that pursuant to 28 U.S.C. § 586(e), he is *required* to collect compensation equal to ten percent of any funds passing through his hands. The statutory commission amounts to $5,759 in this instance, and it is this fee to which the debtors object.

The trustee takes the position that there is no judicial review of fees to a standing trustee serving in a U.S. Trustee pilot area, and bases his argument on 28 U.S.C. § 586(e)(2) which provides that the trustee "shall collect such percentage fee from all payments *under plans* ..." (emphasis added). Because the single disbursement in question was not made pursuant to the plan, the trustee may not prevail under § 586(e)(2), which refers solely to fees for "payments under plans."

We decide this dispute, however, not solely because the payment in question was made outside the plan, but also under the broader concept that as part of its general power the Court retains authority to review the reasonableness of *all* fees in bankruptcy.

There is no reference in the U.S. Trustee Pilot Program provisions, 28 U.S.C. §§ 581–589 and 11 U.S.C. §§ 1501 *et seq.*, as to how disputes like the one now before the Court should be resolved, but we would find it most difficult to draw the inference, as we must if we are to agree with the trustee, that Congress actually intended to create, in this instance, the lone situation in the entire area of bankruptcy law where compensation to be paid out of the estate is not subject to judicial review. It is clear that under 28 U.S.C. § 586(e) the Attorney General of the United States is authorized to *fix* trustee fees:

(e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 13 of title 11, shall fix—

(A) a maximum annual compensation for such individual, not to exceed the lowest annual rate of basic pay in effect for grade GS–16 of the General Schedule prescribed under Section 5332 of title 5; and

(B) a percentage fee, not to exceed ten percent, based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

(2) Such individual shall collect such percentage fee from all payments *under plans* in the cases under chapter 13 of title 11 for which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall pay to the Treasury—(emphasis added).

For the following reason, however, we conclude that § 586(e) serves to establish the mechanical procedure for accumulating a reserve fund from which trustees under the pilot program will receive compensation, but that the intent of the statute is not to eliminate or preclude judicial review of the reasonableness of fees paid pursuant to this section. Section 586(e) is virtually identical to 11 U.S.C. § 1302(e), except for the distinction giving rise to the instant dispute, i.e., that under the pilot program the Attorney General, not the bankruptcy judge, *fixes* fees. We hold, however, that the power to *fix* fees, does not restrain or impair the Court's authority to *review* fees.

Notwithstanding the percentage fee structure set in § 1302(e), the bankruptcy judge has broad discretion in determining the compensation awarded to Chapter 13 trustees in non-pilot districts. *See Foster v. Heitkamp (Matter of Foster)*, 670 F.2d 478, 6 C.B.C.2d 285 (5th Cir.1982) (fixed percentage fee inappropriate when based

on large mortgage payments disbursed by trustee); *In re Case,* 11 B.R. 843 (Bankr.D. Utah 1981) (court may alter statutory fee to reflect actual work performed by trustee); *In re Eaton,* 1 B.R. 433 (Bankr.M.D. N.C.1979) (on $6,000 mortgage payments disbursed monthly by the trustee, statutory compensation was allowed only on the first $600); *see also* 5 *Collier on Bankruptcy* ¶ 1326.01 at 1326–6 (15th ed. 1984) (general survey of instances where courts have made adjustments to fees). Given the traditional approach taken by courts with respect to non-pilot districts, it would be quite inconsistent and illogical to construe the fee provisions of 28 U.S.C. § 586(e) as an absolute entitlement clause allowing pilot program trustees to collect a fixed percentage fee, regardless of the extent and nature of the services rendered in connection with the generation of said fee, solely because he (she) happened to be serving in a pilot area.

We reach this conclusion notwithstanding the trustee's argument that the pilot program strips the Court of all discretion over standing Chapter 13 trustee fees, without vesting any alternate authority for review in the Attorney General, or in anybody else, for that matter. He notes that 11 U.S.C. § 15103(f)[2] makes inapplicable § 326(b) which states:

> In a case under chapter 13 of this title, the court … *may* allow reasonable compensation under section 330 of this title of a trustee appointed under section 1302(a) of this title for the trustee's services, … (emphasis added).

Section 15326, which in pilot areas replaces § 326, provides:

> In a case under Chapter 13 of this title, the court *may not* allow compensation for services … of the United States trustee or of a standing trustee appointed under section 586(b) of title 28, … (emphasis added).

Because § 326 authorizes the court to allow compensation to trustees in "all other situations," and because § 15326 removes that authority with respect to trustees appointed under the U.S. Trustee Program, the trustee contends that "this Court is without any statutory authority to make a determination of the reasonableness of the fees, or to reduce the fees." Trustee's Memorandum at 4. For the following reasons, we disagree:

To begin with, the trustee overlooks that § 326(b) also provides: "the court *may not* allow compensation for services or reimbursement of expenses of a *standing trustee* appointed under § 1302(d) of this title …" (emphasis added). Section 330, which pertains to the awarding of compensation to trustees in cases under Chapter 7 and Chapter 11, is subject to the limitations of § 326(b) which excludes the Chapter 13 trustee whose fee is fixed under § 1302(d). Contrary to the trustee's basic premise, therefore, there is no difference between non-pilot and pilot district provisions regarding the authority of the court to review and allow compensation to a Chapter 13 standing trustee. Accordingly, the reasoning in the above cited non-pilot district cases, which sanction judicial discretion over Chapter 13 standing trustee fees, applies equally in pilot districts. *See Matter of Foster, supra; In re Case, supra; In re Eaton, supra.*

Although the pilot program is administered by the executive branch under the supervision of the Attorney General, neither the language nor the legislative intent of 28 U.S.C. §§ 581 *et seq.* may remove from the bankruptcy court its inherent jurisdiction to hear and resolve disputed issues having a direct bearing on the case being presided over by the judge in all other respects. *See* 1 *Collier on Bankruptcy,* Chapter 6 (15th ed. 1984); H.R. Rep. No. 595, 95th Cong., 1st Sess. 88 (1977) at 107–108, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6069 ("The bill

---

**2.** 11 U.S.C. § 15103 adopts, with certain exceptions, the provisions of the Bankruptcy Code to give them general application in the 18 judicial districts which operate under the United States

Trustee System. Subsection (f) of section 15103 reads: "Sections 303(g), 322(b), 324, *326(b),* … of this title do not apply in a case under this title." (emphasis added.)

introduces the concept that the trustee may take any action necessary to the *administration* of a case.... if an objection is made, the court will hear the dispute generated by the trustee's proposed action ... and make the appropriate orders, either authorizing or prohibiting the trustee's proposed action.") (emphasis added.) It must be kept in mind that once a dispute arises, review of applications for and determination of reasonable fees in bankruptcy are no longer administrative matters. Consistent with the general purpose of the pilot program, section 586(e) of title 28 and 11 U.S.C. § 15326 were intended to transfer to the Attorney General the administrative responsibility for "fixing" the percentage of trustee compensation. Administrative fixing of percentage rates of compensation, and judicial review of the reasonableness of such fees are separate functions, and there is nothing inconsistent in the Attorney General fixing such schedules and the Court hearing objections to and determining the reasonableness of fees paid pursuant thereto. We view it as inviolate and fundamental that the adjudicative function of the Court to review disputed fees must, and does remain intact. *See* 124 Cong.Rec. H11,107 (Sept. 28, 1978); S17,424 (Oct. 6, 1978); *Kontaratos v. Tucker (In re Kontaratos)*, 15 B.R. 298, 302, 5 C.B.C.2d 631, 634 (Bankr.App. 1st Cir.1981). As the trustee concedes, in pilot areas the statute provides no other forum for the adjudication of fee disputes. *See In re Endeco, Inc.*, 1 B.R. 64 (Bankr.N.D.1979); *Epps v. Blackshear (Matter of Epps)*, 2 B.R. 737, 1 C.B.C.2d 368 (S.D.N.Y.1980).[3] Such a void, even if intended by Congress (and there is no indication that such was the intent—rather it appears that this dispute

is the result of Congressional oversight), would be totally at odds with the present as well as the historical policy of judicial responsibility—that of close court scrutiny of all compensation paid out of bankruptcy estates, after notice and hearing, and always with the objective of assuring that such fees are reasonable, from the standpoint of those performing the services, as well as those receiving the benefit of the services.

The enactment of the pilot program was the result of Congress's intention to relieve bankruptcy judges of the routine and burdensome administrative duties associated with the bankruptcy process. By delegating certain administrative responsibilities and functions to the Attorney General and his appointees (the United States Trustees), Congress sought to leave the bankruptcy judge "free to resolve disputes untainted by knowledge of matters unnecessary to a judicial determination." *In re Kontaratos*, *supra*, 15 B.R. at 300, 5 C.B.C.2d at 634 (quoting 124 Cong.Rec. H11,107 (Sept. 28, 1978); S17,424 (Oct. 6, 1978)). The U.S. Trustee Pilot Program was not designed to usurp any function requiring the exercise of judicial discretion (indeed, if the legislative intent were so expressed in plain terms, we would then be faced with a serious separation of powers question).

In this case, we are presented with a genuine dispute that requires a judicial determination. The amount of the trustee's fee will, of course, affect what is available for distribution to creditors, as well as the amount that will have to be paid by the debtors out of future earnings in order to fund the plan. It is absolutely essential to the proper administration of bankruptcy

---

**3.** *Matter of Epps* involved a debtor who petitioned the bankruptcy court to remove the U.S. Trustee for alleged misconduct and bias. The U.S. Trustee contended that the bankruptcy judge lacked power to remove him pursuant to 11 U.S.C. § 15324, which provides that "[t]he court ... may remove a trustee other than the United States trustee, ... for cause ..." and 28 U.S.C. §§ 581(c), 582(b), which expressly entrust power of removal to the Attorney General. Notwithstanding these provisions, the court concluded that to the extent it becomes necessary to

disqualify any trustee, including the U.S. Trustee, from a particular case "a judicial determination is implicated." 2 B.R. at 739, 1 C.B.C.2d at 370. The situation of a bankruptcy judge removing a U.S. Trustee from a case was analogized to that of a U.S. Attorney who can be fired only by authority of the executive branch, but who can be disqualified and removed from a particular case by the court. *Id.; see also United States v. Catalanotto*, 468 F.Supp. 503 (D.Ariz.1978).

matters for the court to have and to exercise the authority to review disputed fee applications and to allow appropriate compensation. These determinations are basic to judicial responsibility, and are not administrative functions pre-empted by the advent of the United States Trustee Pilot Program. *See In re Ruffin, Inc.*, 10 B.R. 862 (Bankr.D.R.I.1981); *In re Lenihan*, 4 B.R. 209 (Bankr.D.R.I.1980).

Accordingly, the trustee may submit within ten days an application and an itemized accounting of his time and accomplishments in support of the reasonable value of his services in this case, including those rendered in connection with the above-mentioned mortgage disbursement. The matter should then be noticed for hearing, and a determination made after the Court has considered the arguments of interested parties.