**In re Edmund SOUSA and Mary Sousa, Debtors.**

**Bankruptcy No. 8201021.**

United States Bankruptcy Court, D. Rhode Island.

May 1, 1986.

B. Lucius Zarlenga, Zarlenga & Associates, Providence, R.I., for debtors.

John Boyajian, Boyajian, Coleman & Harrington, Providence, R.I., Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

On June 20, 1985, the standing Chapter 13 trustee was allowed $1,901.22 for fees and expenses. He filed a motion for reconsideration of the award, and after hearing on December 23 on the debtors' objection, for the reasons discussed below, an order was entered awarding an additional $3,000. The debtor appealed. We review herein the travel of this case, and the trustee's services in connection with the Sousa bankruptcy, in support of the reasonableness of the award in question.

The facts may be summarized briefly as follows: On December 9, 1982, the debtors filed a joint Chapter 13 petition, with the plan to be funded, in part, through the sale of real estate at 62–64 Grove Avenue, East Providence, Rhode Island. The property was subject to a first mortgage to Old Stone Bank. Certain unanticipated events, including Mr. Sousa's failure to receive disability benefits which he intended to pay into the Chapter 13 plan, required the plan as filed to be modified.

The debtors held a second mortgage on two houses (59 Walnut Street and 61–63 Walnut Street, East Providence, owned by their daughter), which they proposed to sell (with their daughter's consent), and to contribute to the plan their share of the proceeds from the sale. Alternatively, the debtors agreed to make monthly payments, under an amended plan, in the event the proposed method of funding did not achieve a one hundred percent distribution to creditors. As it developed, the sale of the real estate took much longer to accomplish than expected.

On a number of occasions, by agreement of the parties, usually either in court or in chambers, after hearing progress reports, the confirmation hearing was continued until arrangements for the sale of the real estate were completed. Finally, in April 1983 we approved the trustee's application

to sell the three properties. Notices of intended sale of both Walnut Street parcels were filed by the trustee on July 13, 1983, and the closings took place in September 1983. The proceeds of the two sales, $35,-291.30 and $23,080.04, respectively, were received by the trustee, who then forwarded a check for $57,590.52 (the payoff balance) to Brian Spero, Esq., attorney for Old Colony Cooperative Bank, which held a blanket first mortgage.

On December 13, 1983, the trustee filed a notice of intended sale of the 62–64 Grove Avenue property, to which the debtors objected, on the ground that the proposed sale price of $50,000 was not "fair and reasonable." The trustee appeared at the scheduled hearing on January 20, 1984, and informed the Court that, based on an independent appraisal, the debtors had withdrawn their objection. After this five week delay, which, with hindsight, at least, appears to have been unnecessary, the Grove Avenue property was sold in March 1984, and proceeds in the amount of $44,462.44 were turned over to the trustee, who disbursed $30,469.19 to Old Stone, the first mortgagee.

The issue of trustee's fees was first raised by the debtors at a continued confirmation hearing on April 19, 1984, in opposition to the trustee's contention that he was statutorily entitled, and in fact required to collect ten percent of all monies disbursed, and that the Court had no authority to review and/or alter the statutory fee. *See* Trustee's Memorandum of Law in Response to Debtors' Objection to Trustee's Fee. In a decision dated October 19, 1984, we rejected the trustee's argument and concluded that in pilot, as well as in non-pilot jurisdictions, the Court retains the authority and responsibility to make determinations concerning the reasonableness of *all* fees, including compensation to the

standing Chapter 13 trustee. *See In re Sousa,* 46 B.R. 343, 344 (Bankr.D.R.I.1984). Upon motion of the United States Trustee to amend findings, an amended decision was issued on February 8, 1985, which clarified, supplemented and reaffirmed our holding that fees to the standing Chapter 13 trustee are judicially reviewable. *In re Sousa,* 46 B.R. 343 (Bankr.D.R.I.1985).[1] The trustee was invited therein to "submit an application and itemized accounting of his time and effort in support of the reasonable value of his services," *Id.* at 347, and he did so. After reviewing the documentation, and based on our independent recollection of all that had happened in this case, it was clear that the $1,900 then thought to be remaining in the Sousa account would be inadequate to fully compensate the trustee. Accordingly, we awarded him the entire balance, without determining the reasonable value of his services, since there were not sufficient assets to pay a reasonable fee in any event.

On November 27, 1985, the trustee filed a motion requesting reconsideration of the June 20 fee award, based on an accounting dated November 27, 1985 which showed $4,051.66 in the Sousa account. The trustee conceded that the earlier balance he had provided to the Court, $1901.22 (*see* trustee's letter dated June 3, 1985), was incorrect, through clerical error. Memorandum in Support of Trustee's Motion for Reconsideration of Fees. The debtors objected to the trustee's request for additional compensation, and an acrimonious hearing was held on December 23, 1985. After considering the arguments of counsel, and considering for the first time the issue of reasonable compensation, an order was entered on January 14, 1986, awarding the trustee an additional $3,000. It is that order, which the debtors have appealed, to which these findings of fact and conclusions of law apply.[2]

---

1. Within days of the filing of this decision, the petition was dismissed, on motion of Old Colony, because of the debtors' failure to make current mortgage payments.

2. Although findings of fact and conclusions of law are not required in connection with fee

awards such as those in question, or on motions for reconsideration, they are provided to facilitate appellate review. *See* Bankruptcy Rule 7052 and Fed.R.Civ.P. 52. *See also In re Botelho,* 8 B.R. 305, 307 (B.A.P. 1st Cir.1981).

The shortage of guidance or precedent regarding the standards to be used in awarding compensation to a standing Chapter 13 trustee in a pilot jurisdiction, on other than the statutory basis, does not persuade us to alter our prior holding in *In re Sousa, supra,*[3] although we acknowledge that we are proceeding in a gray area. Further obscuring matters is the fact that the trustee (understandably) has not been keeping contemporaneous time records for each Chapter 13 case. *See* trustee's letter dated April 23, 1985.

■ Where objections are raised to the standing Chapter 13 trustee's fees, or as is often the case, the Court decides, sua sponte, to initiate a review, the central inquiry should, as always, be the reasonable value of the services in question. *See Foster v. Heitkamp (In re Foster),* 670 F.2d 478, 491–493 (5th Cir.1982) (ten percent fee is a maximum; nothing in Code prevents court from making adjustment on a fair and equitable standard). Since the majority of services performed by the trustee in this case were more legal in nature than administrative, as should be evident below, we think it appropriate to consider, where applicable, the factors[4] for awarding compensation discussed in *King v. Greenblatt,* 560 F.2d 1024 (1st Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), as well as the "lodestar"[5] approach adopted by the First Circuit in *Furtado v.*

*Bishop,* 635 F.2d 915 (1980). Because of the lack of contemporaneous time records, however, we do not approach the question here with the same requirement for detail as would be appropriate in the context of a typical application for attorneys' fees. *See Grendel's Den, Inc. v. Larkin,* 749 F.2d 945 (1st Cir.1984). With these preliminary comments in mind, we turn now to the question of the reasonable value of the trustee's services in this case.

■ Debtors' counsel's attempt to portray the Sousa bankruptcy as an unusually smooth and uncomplicated case borders on the absurd. TR. December 23, 1985 at 20–43. To the contrary, our recollection, substantiated by the attached docket entries, is that the case demanded the trustee's continued attention over a long time, and involved frequent litigation requiring his attendance[6] at numerous conferences and hearings. The record supports Mr. Boyajian's representation that from the filing to the eventual dismissal of the Sousa bankruptcy, December 9, 1982 to February 13, 1985, matters were complicated by the debtors' failure to propose a confirmable plan. TR. at 19. In fact, the trustee was so actively involved in plan formation and modification, that during the pendency of the case he met personally with the debtors, at his office, apparently with the consent, but without the presence of debtors'

---

**3.** It would be redundant and unproductive, and we do not intend, to rehash here our reasons for holding that the Court retains the authority to review the reasonableness of fees awarded to a standing Chapter 13 trustee in a pilot jurisdiction. *See In re Sousa, supra; Foster v. Heitkamp (In re Foster),* 670 F.2d 478 (5th Cir.1982); *In re Case,* 11 B.R. 843 (Bankr.D. Utah 1981); *In re Eaton,* 1 B.R. 433 (Bankr.M.D.N.C.1979). *See also* 5 *Collier on Bankruptcy* ¶ 1326.01 at 1326–6 (15th ed. 1985) ("[p]articular circumstances may warrant equitable adjustment of the trustee's fee").

**4.** 1) The time and labor required 2) the novelty and difficulty of the questions presented 3) the skill required to perform the legal services 4) the preclusion of other employment due to acceptance of the case 5) the customary fee in the community 6) whether the fee is fixed or contingent 7) the time limitations imposed by client or circumstances 8) the amount involved and the

results obtained 9) the experience, reputation and ability of the attorney 10) the undesirability of the case 11) the nature and length of the professional relationship with the client 12) awards in similar cases.

**5.** This approach, which was developed in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3rd Cir. 1973), involves a calculation of the "lodestar" (*number of hours reasonably expended multiplied by a reasonable hourly rate*) which is then adjusted to reflect other considerations such as the contingent nature of the fee, delay in payment, quality of representation, and results obtained.

**6.** When we refer to the time spent by the trustee attending various hearings and conferences, we also consider time reasonably spent in preparation.

counsel. We accept as accurate Mr. Boyajian's statement that he functioned to a large degree as debtors' counsel. TR. at 46. Mr. Zarlenga, who was content to passively watch the trustee perform many services customarily performed by debtors' counsel, may not now complain that the trustee should not be compensated for those services. Perhaps the best way to illustrate the nature (and value) of the trustee's services is to list some, but not all, of the specific matters in which he had direct involvement:

1. Delays in the proposed sale of the real estate, and objections to confirmation filed by two secured creditors, East Providence Credit Union and General Motors Acceptance Corporation (GMAC), required the trustee to appear at at least 10 continued confirmation hearings (1983—January 4, April 6, June 7, June 30, August 30, November 1; 1984—March 9, April 12, April 19, May 17). Because it is totally without merit, we reject summarily Mr. Zarlenga's argument that because GMAC was (or may have been) unreasonable and/or hyper-active in objecting to confirmation, the trustee is not entitled to compensation for time spent responding to the secured creditors' objections. TR. at 22–25.

2. The trustee prepared and filed 1) an application for leave to employ a real estate broker 2) applications for permission to sell the three properties 3) proposed orders approving the sales and 4) an application for approval of payment of a real estate appraiser.

3. He appeared at a hearing on January 20, 1984, on the debtors' objection to the sale of the Grove Avenue property, and prepared a proposed order denying the objection.

4. He prepared and filed accountings and summaries of distributions dated May 17, 1984, November 7, 1985 and November 27, 1985.

5. He appeared at a hearing on June 11, 1984, on the debtors' objection to attorneys' fees claimed by Old Colony and Old Stone, pursuant to 11 U.S.C. § 506(b).

6. He opposed an adversary proceeding instituted by Old Colony for relief from the automatic stay. 11 U.S.C. § 362. The trustee's services during the pendency of that proceeding (January 1983 to July 1984) included preparing and filing an answer, and attending several pretial conferences. *See* attached docket entries for AP No. 830015.

In addition to these services, the trustee also devoted considerable time and effort to drafting and reviewing correspondence related to the Chapter 13 case, telephone conferences, conducting the § 341 hearings, and reviewing purchase and sale agreements and closing statements. *See* trustee's letter dated April 23, 1985, and attached summary.

After considering the nature of the above-described services, as well as the applicable *Greenblatt* factors and the "lodestar" approach, we concluded that the trustee was entitled to an additional $3,000. We emphasize that in making this fee determination, none of the time and effort expended by the trustee in support of his statutory fee argument have been factored into the award. The trustee's statutory 10% fee in this case would be approximately $9,700, and if it is determined in other litigation that we were incorrect in our earlier rulings on the issue of reviewability, that is what he would be entitled to without review. *See* Accounting dated November 27, 1985 (total distribution to creditors exceeded $97,000). With the $3,000 awarded on January 14, 1986, total compensation awarded to the trustee ($4,901.22) equals about fifty percent of the statutory fee under 28 U.S.C. § 586(e), and approximately five percent of the funds collected and administered by him. This case provides an excellent example of why courts must have the right to examine all fees in bankruptcy, from the standpoint of the rights of creditors, as well as debtors.

Although we do not know precisely how many hours the trustee has devoted to this case, in our judgment, based in part on eighteen years' experience in making fee

determinations, we felt that the services performed, the size of the estate, and the results achieved, called for the award of an additional $3,000. In short, we used our best judgment to arrive at a reasonable fee, based on all relevant considerations. *See In re Bishop*, 32 B.R. 302, 305 (Bankr. D.R.I.1983) ("this Court makes no pretense at being capable of determining reasonable compensation with precise certainty ... this Court's decisions on fees represent only our best effort").