In re Robert E. SAVAGE, Debtor.

Bankruptcy No. 84–00549.

United States District Court,
D. Rhode Island.

Nov. 24, 1986.

Boyajian, Coleman & Harrington, Andrew S. Richardson, Providence, R.I., for standing trustee/appellant.

Paula Bonnell, Office of the U.S. Trustee, U.S. Dept. of Justice, Boston, Mass., for U.S. trustee Virginia A. Greiman.

Raskin & Berman, Peter G. Berman (W. Berman, co-counsel), Providence, R.I., Richard Panciera, Westerly, R.I., for debtor.

William Hague, Jr., Providence, R.I., Donald Packer, East Providence, R.I., for various creditors.

## OPINION AND ORDER

SELYA, District Judge.

The sole issue presented in this consolidated appeal is whether or not a bankruptcy court possesses authority under the Bankruptcy Code to review the statutory fees of a so-called Chapter 13 "standing trustee" operating under the United States Trustee Pilot Program, 28 U.S.C. §§ 581–589 and 11 U.S.C. §§ 1501 *et seq* (Pilot Program). Jurisdiction is premised on the provisions of 28 U.S.C. § 158(a). Because the case presents a purely legal question, no special deference is owed to the conclusions of the court below. *In re Hoffman*, 65 B.R. 985, 986 (D.R.I.1986); *In re Roco Corporation*, 64 B.R. 499, 500 (D.R.I.1986).

### I.

The case may be stated with dispatch. On or about October 4, 1984, the debtor, Robert E. Savage, filed a petition and plan under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* The schedules prepared by the debtor listed among the estate's assets a lobster boat and a parcel of real property located in Charlestown, Rhode Island. As originally constructed, the plan contemplated extended payments to creditors, funded by the debtor's future earnings and by monies from an anticipated sale of the boat. The bankruptcy court confirmed the plan on December 19, 1984, ordering, inter alia, that sale proceeds, as and when received, be turned over to the trustee.

The debtor thereafter entered into an agreement for the sale of his Charlestown real estate. And in consequence of this bright prospect, Savage sought to modify the plan to provide for a single payment in full to all creditors, funded entirely from the expected avails of the real estate transaction. In furtherance thereof, the trustee filed a notice (Notice) pursuant to 11 U.S.C. § 363, in which he proposed a sale of the Charlestown property for the price contemplated by the purchase agreement. Paragraph 5 of the Notice stated that "any statutory trustee's fees will be withheld from the proceeds of [the] sale." On May 29, 1985, the bankruptcy court allowed the sale to go forward in accordance with the terms set forth in the Notice. Subsequent to consummation of the deal, the trustee effected due distribution to creditors, withholding some $6000 as his statutory allowance for fees and expenses under 28 U.S.C. § 586(e)(2).

On August 30, 1985, the debtor interposed an objection to the statutory allowance which had theretofore been paid to the standing trustee. The bankruptcy court (Votolato, J.) sustained the objection, declared itself entitled to regulate the compensation of the standing trustee in an individual Chapter 13 case, and requested the trustee to submit an application for fees. On July 24, 1986, following a hearing, Judge Votolato awarded the trustee fees and expenses in the amount of $3,000. Dismayed both by this niggardliness and by the perceived invasion of forbidden ter-

rain, the instant notices of appeal were prosecuted by the United States Trustee (UST) and by the standing Chapter 13 trustee for this district, respectively.

## II.

Before passing on the precise question at bar, a brief assay of the Pilot Program, 28 U.S.C. §§ 581–589 and 11 U.S.C. §§ 1501 *et seq.*, is in order.

Congress created the Pilot Program as part of the Bankruptcy Code of 1978. In so-called 'pilot' jurisdictions, of which this district is one, *see* 28 U.S.C. § 581(a)(1), the UST was authorized to appoint an individual to serve as a standing trustee for all Chapter 13 cases within the district.[1] The appointment was expressly subject to the approval of the Attorney General, 28 U.S.C. § 586(b), who in turn enjoyed broad supervisory authority over standing trustees. *Id.*

The idea behind the Pilot Program was to rid the bankruptcy court of administrative and clerical responsibility for the conduct of Chapter 13 cases, and to transfer this burden to the UST and his appointees.[2] "Experience with the administration of Chapter 13 cases demonstrated that the appointment of a standing trustee responsible for a broad range of duties in all Chapter 13 cases filed from within a specified geographical area resulted in a more efficient and effective Chapter 13 program than the appointment of different trustees to serve in particular Chapter 13 cases." 5 *Collier on Bankruptcy* ¶ 1302.01 at 1302–20 (15th ed. 1984). *See also* H.R.Rep. No.

595, 95th Cong., 1st Sess. 105 (1978); S.Rep. No. 989, 95th Cong., 2d Sess. 139 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The standing Chapter 13 trustee performs the wide variety of legal, quasi-legal, and lay functions commonly associated with all trustees in bankruptcy; his duties are identical to those of his private counterparts in non-pilot districts. *Compare* 11 U.S.C. § 1302(b) *with* 11 U.S.C. § 151302(b).[3]

In 1978, pursuant to 28 U.S.C. § 586(b), the UST for the district of Rhode Island appointed John Boyajian, an appellant, to act as the standing Chapter 13 trustee within this district. Boyajian has held the office continuously since that time. It was Boyajian who laid claim to the fees at issue in this matter, in accordance with the compensation scheme prescribed by the Code and Title 28, *see post.* The appellant contended then, as now, that enactment of the Pilot Program by Congress was designed to eliminate any role on the bankruptcy court's part in overseeing payment of fees and expenses to a standing Chapter 13 trustee, and to transfer such administrative authority to the Attorney General. The court below, *In re Savage*, 60 B.R. 10 (Bankr.D.R.I.1986) (*Savage I*) held otherwise. Relying on its earlier decision, *In re Sousa*, 46 B.R. 343 (Bankr.D.R.I.1985), the court ruled that the Pilot Program had not fundamentally altered the fees landscape; in Judge Votolato's view, he retained the authority to review the fees and expenses claimed by a standing Chapter 13 trustee in any given case. *Savage I*, 60 B.R. at 11. Although conceding that the Bankruptcy

---

1. After the filing of Savage's petition, an expanded UST network was enacted, extending the 5 year Pilot Program on a permanent basis to serve most of the country. Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act, Pub.L. No. 99–554, 99th Cong., 2d Sess. (1986). The dimensions of the present problem are unaffected by these legislative changes. Indeed, the extension of the UST scheme magnifies the importance of the issue at bar.

2. Under the aegis of an Assistant Attorney General in the Department of Justice, the UST is responsible for supervising panels of private trustees. It is the UST, rather than the court,

who appoints trustees, monitors the handling of bankruptcy cases, and carries out such other functions as may be prescribed by the Attorney General relative to bankruptcy administration. And, in Chapter 13 cases where no standing trustee is eligible or willing to serve, the UST is required to act *qua* trustee in the proceeding. *See generally* 9 Am.Jur.2d *Bankruptcy* §§ 178–195 (1980).

3. For a general discussion of the divers responsibilities of a Chapter 13 trustee, *see* 5 Collier on Bankruptcy ¶ 1302.01 at 1302–5–18 (15th ed. 1984).

Code contained no express provision for judicial review of such allowances, the bankruptcy judge found this to be the result of "congressional oversight." *See In re Sousa,* 46 B.R. at 346. The court drew an analogy to standing Chapter 13 trustee fee cases in non-pilot districts, *see, e.g., Foster v. Heitkamp,* 670 F.2d 478, 6 C.B. C.2d 285 (5th Cir.1982); *In re Case,* 11 B.R. 843 (Bankr.D.Utah 1981), concluding that

> Administrative fixing of percentage rates of compensation, and judicial review of the reasonableness of such fees are separate functions, and there is nothing inconsistent in the Attorney General fixing such schedules and the Court hearing objections to and determining the reasonableness of fees paid pursuant there to.... It is absolutely essential to the proper administration of bankruptcy matters for the court to have and to exercise the authority to review disputed fee applications and to allow appropriate compensation. These determinations are basic to judicial responsibility, and are not administrative functions pre-empted by the advent of the United States Trustee Pilot Program.

*In re Sousa,* 46 B.R. at 346–47.

It now falls to this tribunal to determine if the decision below correctly interpreted the legislative intent behind the Pilot Program and its enacted scheme for standing trustee compensation.

### III.

We begin with an examination of the statutory apparatus which governs the compensation of standing Chapter 13 trustees appointed under the Pilot Program. 28 U.S.C. § 586(e) provides in relevant part:

> (1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 13 of title 11, shall fix—
>
> (A) a maximum annual compensation for such individual, not to exceed the lowest annual rate of basic pay in effect for grade GS–16 of the General Schedule prescribed under section 5332 of title 5; and
>
> (B) a percentage fee, not to exceed ten percent, based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.
>
> (2) Such individual shall collect such percentage fee from all payments under plans in the cases under chapter 13 of title 11 for which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall pay to the Treasury—
>
> (A) any amount by which the actual compensation of such individual exceeds five percent upon all payments under plans in cases under chapter 13 of title 11 for which such individual serves as standing trustee; and
>
> (B) any amount by which the percentage for all such cases exceeds—
>
> (i) such individual actual compensation for such cases, as adjusted under subparagraph (A) of this paragraph; plus
>
> (ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases.

This labyrinthine language cries out with some degree of desperation for the catharsis of an explication. 28 U.S.C. § 586(e)(1)(A) requires the Attorney General, upon consultation with the UST, to "fix" a salary for the standing trustee that may not be greater than the lowest rate of basic pay for grade GS–16[4] of the General Schedule prescribed under 5 U.S.C. § 5332. Paragraph (e)(1)(B) further requires the Attorney General to "fix" a percentage fee, not to exceed 10% "based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee." In theory at least, the Attorney General fashions the percentage fee in order to meet the standing trustee's maximum salary and estimated expenses. (The percentage fee in Rhode

---

**4.** Not coincidentally, this grade is also the maximum attainable by any UST.

Island has been set at 10% at all times material hereto.)

The statute requires the standing trustee to collect the aforesaid percentage fee from all payments under plans in the cases in which he serves. *Id.* at § 586(e)(2). In essence, the trustee retains these funds to pay his authorized salary and to defray whatever office expenses are incurred. H.R.Rep. No. 595, *supra,* at 106. Any excess monies collected are to be remitted to the UST, and eventually, to the federal treasury. 28 U.S.C. § 586(e)(2). Pursuant to the formula prescribed in the statute, the standing trustee must relinquish any amount by which his annual salary exceeds 5% of all payments made in the Chapter 13 cases in which he served during the relevant period, *id.,* and must also pay to the UST the excess, if any, of percentage fee receipts over the sum of the standing trustee's salary plus the office expenses incident to administering the cases in which he served. 28 U.S.C. § 586(e)(2)(B). *See also* H.R.Rep. No. 595, *supra,* at 440.

Before leaving the labyrinth, it is important to clarify that the compensation of standing trustees in the Pilot Program has historically been governed exclusively by 28 U.S.C. § 586(e). Code § 15103(f) makes the more familiar fee-setting modality, 11 U.S.C. § 326(b), inapplicable in Chapter 13 cases in pilot districts. Code § 15326 replaces § 326(b), and provides:

> In a case under Chapter 13 of [the Code], the court may not allow compensation for services or reimbursement of expenses of the United States trustee or of a standing trustee appointed under section 586(b) of title 28, but may allow reasonable compensation under section 330 ... of a trustee appointed under

section 1302(a) ... for the trustee's services, payable after the trustee renders such services, not to exceed five percent upon all payments under the plan.[5]

It should be noted, however, that this limitation on the court's power to award compensation in Chapter 13 cases "relates only to the services of the trustee *in his capacity as trustee.* The language does not preclude payment of compensation otherwise authorized under the Code...." *In re Smith,* 3 C.B.C.2d 795, 797 (Bankr.D.R.I. 1980) (emphasis in original).

To borrow a phrase, Congress "chose to include the things [t]hat in each other are included, the whole, [t]he complicate, the amassing harmony."[6] The sum and substance of this orogeny was to declare that the actual compensation of a standing Chapter 13 trustee could not exceed either the lowest pay for grade GS–16 or 5% of all payments received under Chapter 13 plans administered by the trustee. Reimbursement for expenses may not aggregate more than the difference between the trustee's actual compensation and 10% of all payments under those Chapter 13 plans which have been entrusted to his ministrations. Any sums collected in excess of these limitations must be paid into the treasury to help defray the cost of the UST program as a whole. H.R.Rep. No. 595, *supra,* at 440. *See generally* 5 *Collier on Bankruptcy* ¶ 1302.01[5][A] (15th ed. 1984).

### IV.

■ In the flickering light of this incandescent background, the court must now address the question of whether a bankruptcy judge possesses the authority to review and influence the fees and expenses

---

**5.** Collier correctly points out that "[a]lthough 11 U.S.C. § 15326 provides that the court may allow reasonable compensation of a trustee appointed under section 1302(a), the appointment of such a trustee is not possible in a Chapter 13 case in the pilot districts where the United States trustee system is operative. Section 15102 contains the rule of construction that 'a reference to a section that is made inapplicable under section 15103(f) ... refers to the section [of chapter 15] that replaces such inapplicable

section.' Section 1302(a), (d) and (e) does [sic] not apply to a case in a pilot district. *See* 11 U.S.C. § 15103(f).... Consequently, the reference to section 1302(a) in section 15326 must be read as a reference to section 151302." 2 *Collier on Bankruptcy* ¶ 326.02 at 326–30–31 n. 15 (15th ed. 1984).

**6.** Wallace Stevens, *Notes Toward a Supreme Fiction* VI (1947).

collected by a standing Chapter 13 trustee pursuant to the statutory Pilot Program formula. It is well to note at the outset that nothing in the statute's express language resolves the issue with certitude. And, the legislative history is likewise delphic. The caselaw is scant: aside from the court below, no other tribunal has squarely confronted the conundrum posed by these litigants.[7] Approaching the issue as one of novel impression, this court finds that the compensation of the standing Chapter 13 trustee was of no legitimate concern to the bankruptcy court; and, accordingly, vacates the order entered below.

It is a time-tested tenet of statutory construction that, when attempting to divine congressional intent, one looks first to the language of the statute itself. *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In this instance, the wording of the enactment, albeit not completely dispositive of the question before the court, plainly suggests that, in pilot districts, a standing Chapter 13 trustee's fees and expenses should come within the jurisdiction of the executive branch, in the person of the Attorney General. As acknowledged by the bankruptcy judge, *see In re Sousa,* 46 B.R. at 344, the statute contains no provision for judicial supervision of the compensation paid to standing Chapter 13 trustees. Although it is not

inconceivable that the omission was the product of "congressional oversight," *id.* at 346, a review of the overall statutory scheme reveals that such a position is basically a bankrupt one.

In the first place, the law states in no uncertain terms that "[i]n a case under Chapter 13 ..., *the court may not allow compensation for services or reimbursement of expenses of ... a standing trustee appointed under section 586(b) of title 28....*" 11 U.S.C. § 15326 (emphasis supplied). This language alone arguably eliminates any role for the court in determining the fees of a standing Chapter 13 trustee appointed in a pilot district. Moreover, Congress has phrased other provisions of the statute in such definite and mandatory terms as would belie the notion that they are subject to judicial review. 28 U.S.C. § 586(e)(1), for example, requires the Attorney General to "fix" the maximum annual compensation of the standing trustee(s).[8] To like effect, the law further states that the standing trustee "*shall collect* such percentage fee from all payments under plans...." 28 U.S.C. § 586(e)(2) (emphasis supplied). Finally, 11 U.S.C. § 151326(2) mandates that, in a pilot district, a standing trustee's fee be paid "before or at the time of each payment to creditors under the plan." Given that the trustee, following confirmation of any particular plan, must distribute funds to creditors according to a

---

**7.** The matter has, however, been addressed in passing. In *In re Phelps,* C.A. No. 82 C 7496, slip op. at 21 (N.D.Ill, November 14, 1983), Judge Marshall declared in dictum that § 586(e) "implicitly leaves to the Attorney General the determination of a standing chapter 13 trustee's compensation for Code cases in a pilot district, and that the bankruptcy court ... therefore may not limit [the trustee's] compensation for Code cases." This conclusion coincides with the views of this court. *See* text *post.*

The appellee's reliance on *In re Eaton,* 1 B.R. 433 (Bankr.M.D.N.C.1979), is misplaced. There, the bankruptcy court ruled—with little or no analysis—that the Code did not bar a court from equitably adjusting an excessive fee. *Id.* at 434. *Eaton* (which appears, in any event, to be wrongheaded) is distinguishable in a critical respect: *Eaton* was decided in a non-pilot district, where the prophylactic language of 11 U.S.C. § 15326 did not apply. And, without

citing precedent or engaging in any legal reasoning anent Chapter 13's trustee compensation scheme, the *Eaton* court expressly relied on the absence of this kind of statutory guidance to justify judicial massaging of the fee claimed.

**8.** *Compare, e.g.,* 28 U.S.C. § 586(e)(1) *with* 11 U.S.C. § 1302(e)(1), which authorizes a court that has appointed a standing trustee under § 1302(d) to "set for such individual" a maximum annual compensation. The 1984 amendments to the Code substituted the quoted phrase for the single word "fix." It can forcefully be argued that, in fashioning this revision, Congress meant to signal the relative permanence which attaches to the compensation of standing trustees in pilot (as opposed to non-pilot) districts. But, since the legislative history evidences no explicit rationale underlying the alteration in verbiage, the court places no undue reliance on this legislative legerdemain.

totally administrative schedule (without any judicial involvement therein), it seems unlikely that Congress contemplated judicial oversight of the trustee compensation which, by statute, is to be paid contemporaneously with such distributions.

A comparison of the compensation modality for pilot district trustees with that erected for trustees serving under Chapter 7 or Chapter 11 lends further support to the conclusion that Congress never had in mind case-by-case judicial review of the fees and expenses paid to standing Chapter 13 trustees. The statutes (11 U.S.C. §§ 326–30) provide the ossature of a decipherable fee structure for trustees serving in Chapter 7 and Chapter 11 cases. Section 326(a), for example, sets a maximum fee for a trustee (under Chapter 7 or 11) in the form of a percentage of monies disbursed in the case: 15% on the first $1,000 or less, 6% on amounts over $1,000 but not in excess of $3,000, and 3% on such balance as exceeds $3,000. Subject to this sliding scale, the court is authorized, upon notice and hearing, to award a trustee "reasonable compensation for actual, necessary services rendered...." 11 U.S.C. § 330(a)(1). Moreover, the enactment furnishes meaningful criteria to guide the shaping of such awards: reasonableness is to be "based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services...." 11 U.S.C. § 330(a)(1). Section 330(a)(2), of course, also authorizes the court to grant "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(2).

Taken together, these provisions limn a comprehensive methodology for the case-by-case compensation of trustees appointed under Chapter 7 and Chapter 11. What is more, judicial oversight of such compensation is explicitly indicated. In striking contrast, the statute which governs the fees and expenses of standing Chapter 13 trustees in pilot districts is (significantly) silent on these matters; it does not provide for notice, or hearing, or judicial review, and it is utterly barren of criteria by which a court might evaluate fees. Instead, 28 U.S.C. § 586(e) speaks in mandatory terms of a fixed fee, to be adjusted at annual intervals by administrative (rather than judicial) action. It is abundantly clear, therefore, that when Congress meant to implicate courts in the oversight of trustee allowances, it knew how to do so in pointed statutory language. By the same token, the failure of Congress so to provide cannot rationally be viewed as some casual slip of the legislative pen. The conclusion is compelling: under the Code and Title 28, a standing Chapter 13 trustee's statutory allowance is subject only to administrative adjustment by the Attorney General, and not to case-by-case review by the courts.

If principles of statutory interpretation leave any residuum of doubt, an analysis of the pertinent policy considerations suffices to remove all question. As noted *ante*, the Pilot Program, as enacted, represented an effort to transfer ministerial responsibilities incident to Chapter 13 cases from a judicial arena to an administrative one, that is, from the bankruptcy courts to the Attorney General. The method of compensating standing trustees must realistically be viewed as an *important part* of this endeavor. Rather than enmire the courts in the laborious business of setting fees in individual cases—many of them small in terms of assets, and some of them bone-dry—the Code and Title 28 authorized the Attorney General to fix the allowances of standing trustees on a yearly basis. An overall sense of balance thus became achievable. The "no asset" or "meagre assets" cases can be handled professionally, because the system is not dependent upon each individual matter to generate its own fees. To the contrary, the Attorney General considers *the volume of cases committed to the trustee,* reviews the trustee's program-related expenses for the prior year, and projects the amount of funds that will be handled during the upcoming year. This overall forecast—rather than the vicissitudes of each individual filing—becomes the cynosure of the fee calculation. And,

there is some built-in prophylaxis: lest the remuneration for standing trustees prove excessive, the statute sets a ceiling on both annual and per case compensation. *See* 28 U.S.C. §§ 586(e)(1)(A), (e)(2).

The statutory machinery which Congress has enlisted to determine the trustee's allowance—the setting of the percentage fee, the reimbursement of actual, necessary office expenses, the limits on compensation, and the required rebate of overages to the United States treasury—comprises an integrated administrative process which defies piecemeal judicial alteration. Hence, programmatic and policy considerations counsel ineluctably in favor of keeping the judicial nose from poking into the UST's tent.

Notwithstanding this seeming confluence of important factors, the appellee argues that no individual in Chapter 13 should be required to pay more in trustee fees and expenses than is reasonably attributable to the services rendered in his particular case. The bankruptcy judge concurred.[9] Aside from its patent incompatibility with the Pilot Program's elaborate administrative scheme, *see ante*, the position is ill-considered for a host of practical reasons as well.

In the first place, the argument begs the question. It assumes (erroneously) that the individual debtor is the appropriate unit from which the reasonableness of the trustee's stipend should be measured. But, that is simply not the case: Congress has, in pilot districts, plainly chosen to spread the costs of trusteeship pro rata over *all* Chapter 13 debtors within the court's jurisdiction. In point of fact, the standing Chapter 13 trustee in this district does not maintain time records for these cases, *see ante* n. 9, and there is no valid reason for him to do so. Given the predictable volume, mandatory maintenance of such records on an individual case basis would impose an onerous (and wholly unnecessary) burden on the trustee. Moreover, the standing trust-

ee performs a multitude of functions in connection with the program as a whole—the preparation of fiscal year budget requests and annual accounting reports are illustrative—which cannot properly be attributed (in terms of time and expense) to any particular case(s). Yet, it cannot be gainsaid that these duties must be performed, that it is incumbent upon the trustee to carry them out, and that he is entitled to recompense for the work entailed.

With respect to reimbursable expenses, the problems which attend to case-by-case review loom equally large. The standing trustee maintains an office charged with ongoing responsibility for the administration of large numbers of Chapter 13 cases. It would be altogether inefficient, verging on the ludicrous, to expect him to determine which of his many expenses—general overhead, rents, computer costs, secretarial time, equipment, and so on—match up with particular cases. In addition, the Code's treatment of this issue vis-a-vis court-appointed trustees further suggests the impracticality of the approach urged by the appellee. 11 U.S.C. § 326(b) provides for a *5% fee* to be paid to persons appointed by the court on an individual case basis, without authorizing any additional expense reimbursement per se. A fair inference can be drawn that this construct evidences Congress's recognition of the impossibility of itemizing routine expenses on a case-by-case basis. The court takes notice of the fact that this task is all the more difficult when, rather than handling a single case in isolation, the standing trustee is committed to captain scores of such cases on a regular basis.

There is, too, another facet of the case-by-case methodology which merits attention. Even if the trustee somehow, some way, could approximate the scope and extent of fees and expenses attributable to particular cases with any kind of accuracy,

---

**9.** *See Savage I, supra; In re Sousa, supra.* In the case at bar, the standing trustee has indicated that he maintained no records of the time and expenses attributable to the case, that the total attorney time did not exceed 15 hours, and

that the expenses were unremarkable. In short, though he contests the power of the court to review his fee, Boyajian implicitly concedes that, if the power exists, the particular result reached in this instance is unexceptionable.

judicial review of the resultant allocations to ensure "reasonableness" would run at cross purposes with the internal mechanics and objectives of the Pilot Program. The percentage fixed by the Attorney General to determine allowable compensation in no way purports to constitute a precise prognostication of what the value of a trustee's services will be in *every* Chapter 13 case. It is certainly true that in some instances, as may be the case here, the allowance collected under the statute will exceed the fair value of the work performed. But, in as many (or more) instances—say, where the case had an inordinate degree of complexity or is one in which no monies whatever are available for distribution—the statutory percentage will provide remuneration insufficient to reimburse the trustee fully (or, in the worst cases, at all) for his time and expenses. Thus, the view of the Chapter 13 universe advocated by the appellee and endorsed by the bankruptcy judge would result in a heavy imbalance: in cases of the former type, "excessive" fees would be adjusted downward (as the bankruptcy court did here); yet in cases of the latter genre, the fixing of the compensation ceiling mandated by the statute would prevent any corresponding (upward) adjustment, and would force the standing trustee to absorb the operating losses.

A one-way street of this sort would be fundamentally unfair. This court will not lightly impute to Congress the intent to give birth to such a misshapen creature. At bottom, the debtor's version of the statutory scheme would place a standing Chapter 13 trustee in a classic no-win situation:

"heads you lose, tails you break even." If this lopsided view were to prevail, it would threaten to capsize the entire system; the Attorney General would be hard pressed to find qualified individuals willing to serve as standing trustees in pilot districts.

■ Congress could not have intended to empower the bankruptcy court with discretion to force standing trustees to operate at what amounts to a guaranteed loss. On the contrary, the compensation mechanism embodied in 28 U.S.C. § 586(e) seems designed to achieve precisely the opposite effect. The statute must be read in harmony with its plain language and evident meaning, to provide reasonable remuneration to standing trustees in pilot districts, on an annual basis, for their administration of the Chapter 13 program as a whole. Case-by-case judicial review of trustee compensation contravenes—indeed, perverts—this programmatic policy, and must therefore be rejected.[10]

### V.

For the foregoing reasons, the instant appeal is *sustained.* The decision of the bankruptcy court upholding the debtor's objection to the standing Chapter 13 trustee's fee allowance is *reversed.* The order of July 24, 1986 (wherein the bankruptcy judge purported to set the appellant's fees and expenses in a lesser amount than statutorily permitted) is *vacated.* The case is *remanded* to the court below for the entry of an order allowing the standing Chapter 13 trustee's fees and expenses to the full extent commensurate herewith, and for

---

**10.** This court is aware of the bankruptcy judge's expressed fear that adoption of the appellant's position would offend the separation of powers doctrine. *In re Sousa, supra,* at 346. This concern, however, is chimerical. Congress enjoys a constitutional mandate to render bankruptcy laws, U.S. Const. Art. I, § 8, cl. 4, and the Supreme Court has interpreted this authority broadly. *E.g., United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973). It cannot fairly be disputed that Congress was within this constitutional authority when it established the Pilot Program. It was the Congress, not the Attorney General, which provided that the system would be funded exclusively by debtor payments. And, it was Congress that chose to wrest review of trustees' fees and expenses from the courts, entrusting such oversight to the Attorney General. Although Congress may indeed, in this limited context, be divesting bankruptcy judges of a power they once possessed under the Bankruptcy Act, its constitutional authority to do so is beyond peradventure. After all, it was Congress that gave courts the power to review bankruptcy trustee compensation in the first place. And so long as it does not act irrationally, or invade a fundamental attribute of the judiciary's independence, the Congress that giveth may also taketh away.

such other and further proceedings, consistent with this opinion, as may be reasonably required.

*So ordered.*