**In re Robert W. MYERS, Trustee.**

**Misc. No. 92–303–H.**

United States Bankruptcy Court, D. Oregon.

Nov. 13, 1992.

Paul Cosgrove, Portland, Or., for Trustee.

Pamela Griffith, the local Asst. U.S. Trustee, for The Executive Office for U.S. Trustees.

## OPINION

HENRY L. HESS, Jr., Chief Judge.

This matter came before the court upon the motion of the standing chapter 13 trustee in Portland, Oregon, Robert W. Myers ("Myers"). Myers is represented by Paul

Cosgrove of Portland, Oregon. The motion seeks an order of the court authorizing Myers to pay certain legal defense costs as "actual, necessary expenses incurred by such individual as standing trustee in such cases." 28 U.S.C. § 586(e)(2)(B)(ii). The motion is opposed by the Executive Office for United States Trustees ("EOUST") which is represented by the local Assistant United States Trustee ("AUST"), Pamela Griffith.

FINDINGS OF FACT:

Myers was sued by a former employee who worked in his chapter 13 office. The former employee alleged certain violations of the federal Age Discrimination in Employment Act. Myers denied the allegations and hired counsel to defend the lawsuit. Myers sought permission from the EOUST to pay the defense costs as part of the expenses of his chapter 13 office. The EOUST, in a letter dated July 20, 1992 written by Martha Davis, General Counsel to the Director of the EOUST, refused to allow such payment. In the July 20 letter, the EOUST referred to and relied upon a memorandum from the EOUST, also written by Ms. Davis, to all United States Trustees dated July 10, 1992 which discussed whether "an award for damages for employment discrimination, as well as the attorney fees associated with defending such a lawsuit, may be paid from trust funds held by a standing chapter 13 trustee." (footnote omitted.) Both the July 20, 1992 letter and the July 10, 1992 memorandum are attached to this opinion as exhibits # 1 and # 2, respectively.

After a hearing on the motion, an amended motion was filed that seeks permission to pay the legal expenses from funds received during the years in which the expenses were incurred. No objections to the procedural posture or form of the proceedings have been raised by either party and the court will consider any such objections as having been waived.

The parties stipulate that Myers's standard liability insurance policy does not cover the former employee's claim or the defense costs associated therewith.

Myers argued that the former employee's lawsuit is frivolous and that the defense costs are similar to all the other costs of conducting the business of running the chapter 13 office, which costs are routinely approved by the EOUST.

The AUST admitted at one of the hearings that:

"I think everybody would like to believe that [the lawsuit] is frivolous in this case, and perhaps it is. I have no reason to think it isn't. But we don't know that. And the fact of the matter is that most lawsuits of this nature are going to be settled before they go to a full-blown trial, and we would have no way of knowing whether it's really frivolous or really not frivolous." Transcript of Hearing held September 10, 1992, pp. 15–16, lines 24–25 and 1–6.

Thus, it appears the EOUST has conducted no investigation to determine whether Myers engaged in unlawful conduct. Based on the EOUST's position that Myers's actual conduct is irrelevant, it appears that neither the EOUST nor the AUST intend to conduct any investigation into the former employee's allegations.[1]

1. Obviously, the AUST's statement that she has no way of knowing whether the lawsuit is frivolous is incorrect. The AUST could have investigated the allegations against Myers to determine their accuracy.

The AUST's lack of concern over the accuracy of the former employee's allegations is troublesome to the court. One of the functions of the U.S. Trustee is to "perform the supervisory and appointing functions now handled by the bankruptcy judges, and to monitor trustee performance in more detail than is now practicable." H.R.Rep. 595, 95th Cong., 1st Sess. 101 (1977) U.S.Code Cong. & Admin.News. 1978, pp. 5787, 6062.

The AUST's failure to investigate the allegations against Myers is partly due, no doubt, to the EOUST's policy that the costs of defending such allegations are never considered necessary expenses. Based on this policy, the AUST apparently feels such an investigation is pointless. This attitude, however, demonstrates what this court perceives as a common failing in the AUST's office in carrying out its Congressional mandate to monitor trustees' activities.

This court's experience is that Myers is extremely competent. For example, Myers's commission for chapter 13 payments is currently less than 5% while other similarly-situated offices charge 10%. The lower the trustee's

Despite the AUST's apparent belief that the former employee's lawsuit would be settled, the complaint has now been dismissed by the U.S. District Court for failure to state a claim for relief. Thus, not only did the former employee not prevail in her allegations, the court ruled that she was unable to allege, let alone prove, that Myers had violated the law.

CONCLUSIONS OF LAW

1. Jurisdiction under 28 U.S.C. § 1334

■ The AUST's first argument is that this court has no subject matter jurisdiction. The bankruptcy court's subject matter jurisdiction derives from 28 U.S.C. § 1334(b) which states, in relevant part:

[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The EOUST argues that the U.S. District Court would not have jurisdiction over this matter since it does not arise under title 11 or relate to cases under title 11. Based on this argument, the EOUST asserts that the Bankruptcy Court does not have jurisdiction.[2]

The Ninth Circuit Court of Appeals has ruled that § 1334's reference to "related to" jurisdiction should be given as broad a scope as possible to allow the bankruptcy courts to carry out the purposes of the Code. *In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988). The AUST admits that the outcome of Myers's motion could affect individual cases:

It is true that the outcome of disputes concerning reimbursable expenses could conceivably affect the administrative costs of chapter 13 cases and, therefore,

charges the greater the dividends to unsecured creditors. Myers's commission has never exceeded 5% and at times has been as low as 3.5%. The low commission is directly due to Myers's constant efforts to increase efficiency and lower costs. It is unfortunate that one of the most efficient standing trustee operations in the country is apparently not recognized as such by the supervising agency. Rather than investigate the truth of the charges made against this obviously competent and valuable standing trustee, the AUST and EOUST are content to assume that Myers violated the law and there-

the percentage fees that are collected from payments under confirmed plans. Memorandum of Law in Support of United States Trustee's Response in Opposition to Motion for Order Allowing Trustee to Retain Surplus Funds and to Pay Costs of Trustee's Defense (Hereafter "AUST's Memo"), p. 5, lines 1–5.

The court agrees that the outcome of this case could affect individual cases. Thus, the court concludes that the district court has jurisdiction under 28 U.S.C. § 1334. By virtue of 28 U.S.C. § 157(a) and Local Rule 2101-1, the U.S. District Court has referred this proceeding to this court.

■ The EOUST has not argued that this is not a core proceeding under 28 U.S.C. § 157(b). Pursuant to 28 U.S.C. § 157(b)(3), however, the court must make this determination on its own motion. Under 28 U.S.C. § 157(b)(2)(A), "core" proceedings include "matters concerning the administration of the estate." The present issue directly affects the administration of estates, as previously mentioned. Whether § 157(b)(2)(A) was intended to apply in this context is uncertain. However, as will be discussed next, Congressional intent indicates that the bankruptcy court was not intended to be removed from determinations such as these. Thus, the court concludes this is a core matter under § 157(b)(2)(A).

2. The Bankruptcy Court's Authority under 11 U.S.C. § 326(b)

■ The EOUST argues that the court has no authority to grant the motion under 11 U.S.C. § 326(b). In her memorandum of law, the AUST argues:

fore refuse to allow reimbursement of the expenses in question.

2. It should be noted that the U.S. District Court would have jurisdiction under 28 U.S.C. § 1331 which provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States. Thus, if this matter had been brought in the U.S. District Court, it would be unnecessary to analyze 28 U.S.C. § 1334, which deals with bankruptcy.

Section 326(b) of the Bankruptcy Code states that "the court may not allow compensation for services or reimbursement of expenses * * * of a standing trustee appointed under section 586(b) of title 28." The statute is crystal clear—the court has absolutely no authority to determine Chapter 13 standing trustee compensation and expenses. AUST Memo, p. 6, lines 17–23.

The court disagrees. First, the AUST did not quote all the relevant language in § 326(b). Section 326(b) provides, in full, the following:

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, and three percent on any amount in excess of $3,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

(b) In a case under chapter 12 or 13 of this title, the court may not allow compensation for services or reimbursement of expenses of the United States trustee or of a standing trustee appointed under section 586(b) of title 28, but may allow reasonable compensation under section 330 of this title of a trustee appointed under section 1202(a) or 1302(a) of this title for the trustee's services, payable after the trustee renders such services, not to exceed five percent upon all payments under the plan.

(c) If more than one person serves as trustee in the case, the aggregate compensation of such persons for such service may not exceed the maximum compensation prescribed for a single trustee by subsection (a) or (b) of this section, as the case may be.

(d) The court may deny allowance of compensation for services or reimbursement of expenses of the trustee if the trustee failed to make diligent inquiry into facts that would permit denial of allowance under section 328(c) of this title or, with knowledge of such facts, employed a professional person under section 327 of this title.

The introductory phrase in § 326(b) states that the statute is applicable: "In a case under chapter 12 or 13 of this title." As the AUST pointed out earlier in her memorandum:

Although Mr. Myers has filed a motion in this court it was not filed in a case pending under Title 11, and for the reasons hereinafter discussed, it does not affect a case pending under Title 11." AUST Memo, p. 3, lines 17–20.

Thus, the AUST admits that this matter does not arise: "In a case under chapter 12 or 13 of this title" as required for § 326(b) to be applicable. It follows that § 326(b) is not applicable.

■ Second, the AUST did not cite subsection (d) of § 326, which is quoted above. This statute indicates that Congress did not intend to completely remove these questions from the jurisdiction of the bankruptcy court. The AUST also ignores 11 U.S.C. § 330(c) which provides:

Unless the court orders otherwise, in a case under chapter 12 or 13 of this title the compensation paid to the trustee serving in the case shall not be less than $5 per month from any distribution under the plan during the administration of the plan.

The phrase "Unless the court orders otherwise" in this statute demonstrates that Congress did not intend to completely remove the bankruptcy court from issues concerning compensation of standing trustees as is asserted by the AUST.

■ Finally, other courts reviewing the law in this area have not found § 326(b) and the related statutes "crystal clear" as the AUST finds them. For example, in *In re Savage*, 67 B.R. 700 (D.R.I.1986), the District Court described the relevant statutory provisions as constituting:

Labyrinthine language [that] cries out with some degree of desperation for the catharsis of an explication. *Id.* at 703.

That same court decided that "nothing in the statute's express language resolves this issue with certitude. And, the legislative history is likewise delphic." *Id.* at 705.[3]

In *In re Sousa,* 46 B.R. 343 (Bankr.R.I. 1985), the court was faced with a similar issue in what was then a pilot U.S. Trustee district. The court discussed its authority to review a standing chapter 13 trustee's fees notwithstanding the statutory language that arguably authorizes the Attorney General to set such fees. The court wrote:

> Administrative fixing of percentage rates of compensation, and judicial review of the reasonableness of such fees are separate functions, and there is nothing inconsistent in the Attorney General fixing such schedules and the Court hearing objections to and determining the reasonableness of fees paid pursuant thereto. We view it as inviolate and fundamental that the adjudicative function of the Court to review disputed fees must, and does remain intact. *Id.* at 346.

Later, the court wrote:

> "The U.S. Trustee Pilot Program was not designed to usurp any function requiring the exercise of judicial discretion (indeed, if the legislative intent were so expressed in plain terms, we would then be faced with a serious separation of powers question)." *Id.* at 347.

Although the facts in *Sousa* are not identical to those in the instant case, the reasoning in *Sousa* strongly supports the conclusion that the court has the authority to determine a dispute concerning a standing chapter 13 trustee's expenses. This court agrees with the reasoning in *Sousa*.[4] Based on a review of the statutory language, the legislative history and relevant case law, this court concludes that § 326(b) was not intended to bar the court from considering the instant motion.

3. Attorney General's Authority to Determine "Actual, Necessary Expenses."

■ The AUST argues that:

> Mr. Myers' motion ultimately challenges a decision that is committed by law to the authority of the Attorney General and the United States Trustee. It is the responsibility of these executive branch officials to fix the percentage fees and maximum annual compensation of chapter 13 standing trustees based upon a consideration of the actual, necessary expenses incurred by those individuals as standing trustees. To carry out their statutory duties, these executive branch officials determine the "actual, necessary" expenses that may be reimbursed from the prescribed percentage of plan payments which standing trustees receive in trust. AUST Memo at p. 4, lines 1–11.

This argument is apparently based on the provisions of 28 U.S.C. § 586(e)(1) and (2). Again, however, the AUST fails to quote the entire relevant provisions of 28 U.S.C. §§ 586(e)(1) and (2). 28 U.S.C. §§ 586(e)(1) and (2) provide:

> The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection

---

3. In *Savage,* the court ultimately found that "policy considerations counsel ineluctably in favor of keeping the judicial nose from poking into the UST's tent." *Savage* at 707. While the AUST in this case quoted from *Savage* to support this proposition, she failed to quote the language from *Savage* that indicates the issue of the court's authority after the advent of the U.S. Trustee system is complex and uncertain. To the contrary, the AUST argues that § 326(b)'s language is "crystal clear." AUST Memo, p. 6, lines 21–23.

Such exaggeration and selective references to authority by over zealous counsel are all too common in the court's current experience. These questionable practices are an insult to the court's intellect and do not assist the court in reaching a correct decision. The court can no longer rely on counsel to correctly and fully disclose applicable law and must review all cited authorities in their entirety. This costs the court a great deal of effort and time and delays the administration of justice. If it were shown that such practices were intentional rather than mere negligence, they would be grounds for sanctions and possible disciplinary action. See DR 7–102(A)(5) and DR 7–106(B)(1).

4. *Sousa* was effectively overruled by *In re Savage,* cited above. This court is not bound by *Savage* and cites *Sousa* because of its persuasive reasoning.

(b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix—

(A) a maximum annual compensation for such individual consisting of—

(i) an amount not to exceed the highest annual rate of basic pay in effect for level V of the Executive Schedule; and

(ii) the cash value of employment benefits comparable to the employment benefits provided by the United States to individuals who are employed by the United States at the same rate of basic pay to perform similar services during the same period of time; and

(B) a percentage fee not to exceed—

(i) in the case of a debtor who is not a family farmer, ten percent; or

(ii) in the case of a debtor who is a family farmer, the sum of—

(I) not to exceed ten percent of the payments made under the plan of such debtor, with respect to payments in an aggregate amount not to exceed $450,-000; and

(II) three percent of payments made under the plan of such debtor, with respect to payments made after the aggregate amount of payments made under the plan exceeds $450,000;

based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

(2) Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall deposit in the United States Trustee System Fund—

(A) any amount by which the actual compensation of such individual exceeds 5 per centum upon all payments received under plans in cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee; and

(B) any amount by which the percentage for all such cases exceeds—

(i) such individual's actual compensation for such cases, as adjusted under subparagraph (A) of paragraph (1); plus

(ii) the actual, necessary expenses incurred by. such individual as standing trustee in such cases. Subject to the approval of the Attorney General, any or all of the interest earned from the deposit of payments under plans by such individual may be utilized to pay actual, necessary expenses without regard to the percentage limitation contained in subparagraph (d)(1)(B) of this section.

First, contrary to the AUST's assertion, § 586(e)(1) does not authorize the United States Trustee to fix the maximum compensation and percentage fee. Rather, the Attorney General is authorized to fix these figures *"after consultation with a United States trustee...."*

█ Second, a careful reading of this statute reveals that the Attorney General is only authorized thereunder to fix:

1. The standing trustee's maximum annual compensation; and

2. A maximum percentage fee to be charged against payments received under chapter 12 or 13 plans.

█ It is important to note that while § 586(e)(1) specifies that the Attorney General shall fix these amounts *based on* the "maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee," § 586(e)(2) does not authorize the Attorney General to determine what constitute "actual, necessary expenses" for purposes of determining what must be paid to the United States Trustee fund thereunder.

If Congress intended to authorize the Attorney General to make this latter determination, it could have so indicated. Congress made clear its intent that the Attorney General fix the maximum compensation and percentage fee under § 586(e)(1). Congress could have added similar language to § 586(e)(2)(B)(ii). Congress did not do this and, based on a reading of both subsections of § 586(e), this court believes it intentionally chose not to do this.

The legislative history to § 586(e) states: "The Attorney General is to fix the [percentage] fee based on the salary of the private [standing] trustee and his *projected* expenses in connection with chapter 13 cases." H.R.Rep. No. 595, 95th Cong., 1st Sess. 440 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6395. (Emphasis added.) This history clarifies that the phrase "based on such ... actual, necessary expenses ..." in § 586(e)(1) was intended to indicate that the percentage fee should be set, in part, by projecting future expenses based on past expenses. This is a far cry from saying that the Attorney General was intended to be the final arbiter as to what constitute "actual, necessary expenses" for purposes of determining if there is a surplus under § 586(e)(2).

The legislative history to 28 U.S.C. § 581 states that United States Trustees:

[W]ill consult with the Attorney General to fix the fees that a private standing chapter 13 trustee may charge, and the salary that the private trustee may receive. H.R.Rep. 595, 95th Cong., 1st Sess. 109 (1977).

This legislative history is notable in that it does not state that United States Trustees shall determine what constitute "actual, necessary" expenses.

Thus, neither the statutes nor the legislative history indicate that "the Attorney General and United States Trustees must determine what constitute 'actual, necessary' expenses of standing trustees," as is asserted by the AUST. AUST Memo at p. 8, lines 11–14.

■ For the reasons stated, this court concludes that a determination of the amount to be paid by a standing trustee to the United States Trustee Fund pursuant to § 586(e)(2)(A) and (B) was not committed to the Attorney General (or his designate) and should be determined by this court.

### 4. What Constitute "Actual, Necessary Expenses?"

#### A. *Judicial Determination*

The ultimate question raised in this matter is whether the costs of defending the lawsuit against Myers constitute an "actual, necessary expense" under § 586(e)(2).

The AUST argues that:

Because Congress has not defined the "actual, necessary" expenses of standing trustees, the court should defer to the Program's policy statement interpreting 28 U.S.C. § 586(e) and its decision with regard to Mr. Myers' claim based thereon, because the policy has been rendered by the agency in charge of administering [the] statute and is "based on a permissible construction of the statute." Memo at pp. 8–9, lines 20–25 and 1. (Citing *Wisconsin Elec. Power Co. v. Reilly*, 893 F.2d 901, 907 (9th [7th] Cir.1990) and *Department of Treasury, I.R.S. v. FLRA*, [494 U.S. 922], 110 S.Ct. 1623 [108 L.Ed.2d 914] (1990). AUST Memo, p. 8–9, lines 20–25 and 1–3.

■ First, as just stated, this court does not agree that "the policy has been rendered by the agency in charge of administering the statute" as claimed by the AUST. Disputes over the interpretation of § 586(e)(2) can readily be settled by a court. Thus, the court need not defer to the EOUST's construction of the statute and the court may determine the question without regard thereto.

As with any question of statutory construction, the starting place is the language of the statute itself. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The key phrase in the statute is the "actual, necessary expenses incurred by such individual as standing trustee in such [chapter 12 or 13] cases." 28 U.S.C. § 586(e)(2)(ii). No one seems to dispute that the expenses in question were "actually" incurred. Thus, the only issues are whether the expenses were "necessary" and whether they were incurred by Myers as standing trustee in chapter 13 cases.

■ Taking the second issue first, it can hardly be said that the costs of defending an age discrimination lawsuit brought by a former employee of the standing trustee's office were not incurred by Myers due to his position as standing trustee in

chapter 13 cases. It would be absurd to argue, and the court does not understand the AUST to be arguing, that these expenses were incurred by Myers in any other capacity. It therefore appears that the only real issue is whether these expenses were "necessary."

The term "necessary" is not defined in the relevant statutes and cannot be defined without reference to the context. The present matter arises in a business setting and requires a determination of what constitute expenses reasonably necessary in order to carry on the business of administering chapter 13 estates. Thus, the court turns to other areas of business law to find assistance in defining the scope of "necessary" expenses in this context.

In the case of a former employee's claim against a corporation for alleged discrimination or harassment, the former employee may file a complaint against the corporation and an individual employed by the corporation. In that case, the individual accused of the wrongful conduct as well as the corporation may incur legal expenses in defending the case. The issue then often arises if the individual is entitled to be reimbursed for his legal expenses. This is generally considered under the rubric of "indemnification."

The case at bar is very similar to a director's claim against a corporation for indemnification. Under the law of many states and under the Revised Model Business Corporations Act of 1984 ("RMBCA"), if the complaint was filed against a director or officer based on business-related conduct, the law allows the corporation to indemnify the individual for the expenses incurred in defending the complaint. RMBCA § 8.51(a).

Moreover, under the RMBCA, to the extent the individual is successful in defending the claim on the merits or otherwise, the law *requires* indemnification. RMBCA § 8.52. This requirement has been adopted, with minor variations at various times, by the following states: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Washington, West Virginia, Wisconsin and Wyoming.[5] Thus, the vast majority of states recognize the need for indemnification of innocent officers or directors.

The "mandatory indemnification" laws have developed because of the obvious injustice in denying such indemnification claims to an employee on a limited salary who was acting properly and in the scope of his employment. Mandatory indemnification has also developed because of the lack of insurance and the practical consequences of failing to reimburse directors for the defense costs of unfounded lawsuits, namely, that few qualified people will serve as corporate directors and officers with a limited pay when they are exposed to unlimited potential liability even if they have committed no wrong. See, e.g., Slaughter, *Statutory and Non–Statutory Responses to the Director and Officer Liability Insurance Crisis*, 63 Ind.L.J. 181, Winter, 1987.

The analogy between the corporate law of indemnification and the case at bar is apt. The EOUST takes the position that the standing chapter 13 trustee is not an employee of the United States but is more akin to an independent contractor. July 20, 1992 letter (Exhibit # 1), p. 5. Whether this is correct or not, the standing chapter 13 trustee is entitled by statute to a fixed salary and, in effect, to be reimbursed for all the reasonably necessary office expenses incurred in conducting the business of a standing trustee (except, according to the EOUST, the expense at dispute here). These are not attributes of independent

---

**5.** In many states, where the individual acted in good faith and reasonably believed his/her actions were in the best interests of the corporation, the corporation may indemnify the individual even if a judgment, order, settlement, conviction or plea of nolo contendere is the ultimate outcome of the lawsuit.

contractors. These attributes do, however, closely resemble the attributes of a corporate officer.

██ Given the limited compensation and reimbursement of expenses as fixed by statute, it cannot reasonably be argued that the standing trustee system established in § 586(e)(1) and (2) is intended to place the risk of loss, in the entrepreneurial sense, on the standing trustee. Rather, considering the compensatory scheme outlined in the statutes, it seems Congress intended to insulate the standing trustee from most of the normal risks associated with conducting a private enterprise. It is illogical and contrary to the legislative scheme to argue, as the EOUST and the AUST do in this case, that a standing trustee should bear the risk of unlimited financial exposure to defense costs associated with unfounded lawsuits while being strictly limited in the compensation he can receive.

The field of tax law is also instructive in determining whether such defense costs are a necessary expense. Under 26 U.S.C. § 162(a), individuals and corporations are allowed to deduct all the "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business...." Pursuant to that section, the regulations adopted thereunder at 26 C.F.R. 1.162, and countless cases, it is well established that legal fees for defending lawsuits related to business activities are deductible as "ordinary and necessary" expenses. This lends support to Myers's position.

Further, in an equitable sense, it is unfair in the instant case to fail to advise the standing trustee of his potential liability for such expenses until after the issue has arisen and some of the costs have been incurred. The AUST admits that the EOUST's policy was adopted after the EOUST was advised that the lawsuit against Myers was instituted.

The AUST argues that: "[A] lot of our decision on this policy matter was based on the broad public policy of [sic, probably intended to say "against"] employment discrimination and the importance of that in our country." Transcript of Proceedings, September 10, 1992, p. 12, lines 5–7. This argument would carry some weight if the EOUST had established that Myers had violated the age discrimination laws. As previously stated, however, the EOUST has made no investigation into the facts of the claim to determine whether the law was violated. The AUST conceded at one of the hearings on this motion that she did not know whether Myers violated the law. As a result of the U.S. District Court's dismissal of the complaint filed by Myers's former employee, it has now been determined by that court that the former employee failed to state a claim for relief. The former employee could not even allege that Myers violated the law, let alone prove it. Thus, the basis for the EOUST's decision was clearly erroneous.

The AUST and EOUST's failure to differentiate between actual wrongdoing on the part of a standing trustee and mere allegations of wrongdoing is the fatal and recurrent flaw in its analysis of this issue.[6] If the position urged by the AUST were adopted by this or any other court, perfectly competent and blameless trustees could be financially destroyed by frivolous lawsuits related to their activities as trustees. Such a policy would make it difficult to find competent individuals to serve as standing trustees. It is well known by experienced

---

**6.** Even after the U.S. District Court dismissed the complaint against Myers, the AUST filed a memorandum of law in which she continues to assume that Myers violated the employment discrimination laws. In a "Supplemental Memorandum of Law in Response to Amended Motion" dated and filed on October 19, 1992, the AUST writes:

The Program takes the position that reimbursement of discrimination litigation expenses is contrary to the intent of the statute,

insofar as employment discrimination is beyond the scope of the activities for which a standing trustee is employed. Supplemental Memo, p. 3, lines 11–15.

This consistent failure to recognize that Myers was never determined to have violated the law, even after the complaint against him was dismissed, is incomprehensible to the court. This failure is indicative of the AUST and EOUST's inability to grasp the issue at hand and render a logical response thereto.

business people and all attorneys that frivolous lawsuits may be filed against anyone at any time. As discussed above, many such lawsuits may not, as a practical matter, be insured against. Given the litigious age in which we live, the number of competent business people or lawyers willing to serve as standing trustees on a limited salary would be severely diminished if they were advised they would be exposed to unlimited liability for defense costs associated with ungrounded lawsuits related to their activities as trustees.

Based on the analogy to the corporation law just recited, the guidance offered by the Internal Revenue Code and regulations, public policy and equitable considerations, the court rules that Myers's expenses in defending a former employee's lawsuit based on alleged wrongful termination in the course of conducting his business as a standing chapter 13 trustee is a necessary expense under 28 U.S.C. § 586(e)(2) where he has prevailed in defending the charge.

Given the U.S. District Court's determination that the plaintiff failed to state a claim, it is apparent that Myers did not violate the law and the expenses in question should be approved.

B. *Judicial Review of Agency's Action.*

Even if the determination of what constitutes actual, necessary expenses under 28 U.S.C. § 586(e)(2) were appropriately made by the EOUST, such determination is not insulated from judicial review. In her memorandum, the AUST quotes the following language from *Florida Power & Light v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1606–07, 84 L.Ed.2d 643 (1984):

> The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court. AUST's Memorandum of Law in Support of the U.S. Trustee's Response to the Amended Motion, p. 4, lines 7–9.

The AUST fails, however, to quote the following sentence from that opinion:

> The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency

decision based on the record the agency presents to the reviewing court. *Id.* at 743–44, 105 S.Ct. at 1606–07, citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

The AUST's failure to complete the quote from *Florida Power & Light v. Lorion* is understandable, however, given the AUST and EOUST's total disregard for the principles of administrative law and the specific provisions of the Administrative Procedures Act.

Pursuant to 5 U.S.C. § 701(a), chapter 7 of title 5:

> "[A]pplies, according to the provisions thereof, except to the extent that—
>
> (1) statutes preclude judicial review; or
>
> (2) agency action is committed to agency discretion by law."

The relevant statutes in this case do not preclude judicial review. The exception for matters "committed to agency discretion by law" is a very narrow one. *Assoc. Elec. Co-op., Inc. v. Morton,* 507 F.2d 1167 (D.C.Cir.1974). The nonreviewability of agency action is the exception and not the rule and the federal agency seeking to preclude judicial review bears a heavy burden to overcome the strong presumption that Congress intended to permit judicial review. *City of Camden v. Plotkin,* 466 F.Supp. 44 (D.C.N.J.1978). Further, the intent to restrict judicial review must be shown by clear and convincing evidence. *Id.*

As previously discussed, this court does not believe that the determination of what constitutes an "actual, necessary expense" under 28 U.S.C. § 586(e)(2) has been left to the determination of the Attorney General or the EOUST. Even if it has, however, the exception to judicial review of agency action stated in 5 U.S.C. § 701(a)(2) does not apply in this case where there is no proof, let alone clear and convincing proof, that agency action was committed to agency discretion by law.

This is especially true where the issue does not require the exercise of expert

judgment within the special competence of the agency rather than an essentially legal determination. *Ardestani v. INS,* — U.S. ——, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991). The issue in this case involves a legal interpretation of Congressional intent in drafting 28 U.S.C. § 586(e)(2). No special expertise, other than legal training, is required to determine the scope of the phrase "actual, necessary expenses." Thus, the exception under 5 U.S.C. § 701(a)(2) is not applicable and judicial review is appropriate.

 Under the relevant portions of 5 U.S.C. § 701(b)(1), "agency" means:

[E]ach authority of the Government of the United States, whether or not it is within or subject to review by another agency. . . .

Pursuant to specific authorization under 5 U.S.C. § 301 the Department of Justice has prescribed certain regulations for the conduct of its internal affairs. In accordance with 5 U.S.C. § 301 and the Attorney General's power to appoint United States Trustees in certain districts under 28 U.S.C. § 581 et seq, 28 C.F.R. 0.1 describes the United States Department of Justice as consisting of several "principal organizational units" including the "Executive Office for United States Trustees."

Therefore, it appears the EOUST is an "agency" under 5 U.S.C. § 701(b)(1) since it is an authority of the United States government even though it is subject to review by the U.S. Department of Justice.

5 U.S.C. § 702 provides, in relevant part:
A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

Thus, Myers is entitled to judicial review of the EOUST's action.

 Where no statutory scheme for review exists, as is true in this case, "any applicable form of legal action" is appropriate. 5 U.S.C. § 703. Thus, it appears the present motion satisfies this criterion.[7]

 Under 5 U.S.C. § 704, final "agency action" is reviewable by a court where there is no other adequate remedy in a court. The term "agency action" is defined by reference to 5 U.S.C. § 551(13) as follows:

"[A]gency action" includes the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.

Under 5 U.S.C. § 551(4) and (6), "rule" and "order," are defined as follows:

(4) "rule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowance therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing.

(6) "order" means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing.

 In this case, the EOUST's "policy analysis", as set forth in the July 10, 1992 memorandum, is a "rule" under § 551(4). The July 20, 1992 letter to Myers's counsel, which letter denied Myers's request for approval to retain surplus funds is an "order" under § 551(7). Thus, both the July 10, 1992 memorandum and the July 20, 1992 letter constitute "agency action" which are reviewable pursuant 5 U.S.C. § 704.

 Under 5 U.S.C. § 706(2)(A), the court shall:

hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of dis-

---

**7.** As stated previously, the EOUST has failed to raise any procedural objections and seems content with the present procedural posture. Thus, to the extent there are any procedural inadequacies, the court considers them to have been waived.

cretion, or otherwise not in accordance with law.

Under this provision, the court specifically finds that the EOUST's actions were arbitrary and capricious. The July 10, 1992 memorandum dealt with the payment of defense costs of, and damages awarded against, a standing trustee who was found to have violated the law. That is not the case here. The July 20, 1992 letter denying Myers's request, however, purports to rely on the July 10, 1992 memorandum. Since the July 10 memorandum was based on different facts, the reasoning related to those facts is not particularly helpful in this case.

Although the July 20, 1992 letter to Myers purports to rely on the July 10, 1992 memorandum and "such additional considerations as are set forth in this letter" no additional considerations are stated. Instead, the relevant portion of the July 20, 1992 letter is a nearly verbatim restatement of selected portions of the July 10, 1992 memorandum. Again, it must be remembered that the July 10 memorandum was based on the assumption that the standing trustee had committed a wrongful act. A careful reading of the July 20, 1992 letter reveals that it too proceeded from this erroneous assumption. This fact is evidenced by the following paragraph from the July 20, 1992 letter which, in conjunction with the stated reliance on the July 10, 1992 memorandum, constitutes the entire discussion of the reasons for denying Myers's request:

"The monies held in trust by a standing trustee are separate and distinct from the standing trustee. The standing trustee is a fiduciary responsible for the trust funds. The trust does not carry out the duties set forth in the Bankruptcy Code, the standing trustee does. In this sense, individuals assisting the standing trustee are employees not of the trust, but of the standing trustee. Their responsibilities, working hours, conditions, and salary, none of which are unique to the administration of bankruptcy cases, are determined by the standing trustee, as employer. Their relationship is with the standing trustee, not the trust. Any allegations of discriminatory conduct arising in that employment relationship exceeds [sic] the bounds of the trustee's primary duty, which is to administer bankruptcy cases, and trust funds should not be expended to relieve an employer of personal liability for such conduct. *To hold otherwise would render the trust funds an overall insurance policy for discriminatory conduct by standing trustees, contrary to the trustees' fiduciary duties and contrary public policy.* July 20, 1992 letter from Martha Davis, General Counsel, EOUST, p. 2. (Emphasis added.)

It is obvious from the underlined portion of the letter, that the decision was based on an assumption that Myers had engaged in "discriminatory conduct." This assumption was not based on any facts. As previously discussed, the AUST admitted that she did not know whether Myers had discriminated against the former employee. This assumption proved incorrect as evidenced by the U.S. District Court's dismissal of the complaint.

The quoted language from the July 20, 1992 letter is so poorly written and difficult to understand that it borders on nonsense and gives new meaning to the term "bureaucratic doublespeak." For example, the first sentence purports to give relevance to the fact that "monies held in trust are separate and distinct from" the trustee. It is doubtful that anyone involved in this case believes that trust assets are not distinguishable from human beings. This fact is irrelevant.

The third sentence reads:

The trust does not carry out the duties set forth in the Bankruptcy Code, the standing trustee does.

Again, the author seems to believe there is some concern that a legal fiction, a trust, can act without human intervention. It is impossible to understand how this obvious statement of fact is relevant and helpful to the determination of what constitutes an "actual, necessary expense" under the statutes in question.

The next several sentences are an attempt to establish that individuals assisting the standing trustee are his employees and not employees of the trust. Whether this is a correct statement of the law is debatable but it is not debatable that the costs associated with hiring and retaining these employees are satisfied from the trust funds pursuant to the statutory scheme. See 28 U.S.C. § 586(e)(2). Were this not the case, this matter would never have arisen.

Further, although the author of the letter from the EOUST's office states that the salaries of such employees are determined by the standing trustee, the "Handbook for Chapter 13 Standing Trustees" ("Handbook") dated September 1991 (which was prepared by the EOUST's office) contains detailed limits on employee salaries and benefits. The relevant portion of the handbook states:

**Employee Salaries and Benefits:** Regular salaries and wages, including bonuses paid directly to employees and amounts withheld for employees' share, and including amounts paid for employer's share of retirement and insurance contributions, taxes, etc. Employee salary and benefits will be reviewed and monitored to ensure they are commensurate with services performed, but shall not exceed the limitations in 28 U.S.C. 586(e). No employee of a Chapter 13 trustee may receive compensation and benefits of a value greater than the maximum allowable statutory compensation for a chapter 13 trustee.

Each Chapter 13 trustee must have a written position description for each employee. These position descriptions should itemize all duties performed by each employee with sufficient clarity and detail that the positions described can be graded for purposes of determining salary, benefits, and promotion. The position description or descriptions must accompany the yearly budget when submitted.

Should the trustee wish to increase the compensation and benefits of an employee during any twelve month period, the trustee shall provide the United States Trustee with an appropriate amendment to his/her budget, including a written justification for the increase. The applicable position description must accompany the amended budget. Handbook, p. 13.

Thus, to the extent it is relevant, the underlying assumption that salaries are set by the standing trustee is incorrect.

The next sentence of the letter states:

Any allegations of discriminatory conduct arising in that employment relationship exceeds [sic] the bounds of the trustee's primary duty, which is to administer bankruptcy cases, and trust funds should not be expended to relieve an employer of personal liability for such conduct.

The reader of this sentence is told that "allegations of discriminatory conduct" exceed the trustee's duty. This makes one wonder if the author of the letter understood that the standing trustee did not make the allegations of discriminatory conduct. If the author understood this fact, how is it relevant to the question at hand that a trustee's duties do not include making allegations of discriminatory conduct?

One has to guess at what the author meant in order to make any sense out of this sentence in the context in which it was written. It is possible the author intended to write that discriminatory conduct is (obviously) not authorized and liability related thereto will not be indemnified with the expenditure of trust funds. While this might be a reasonable policy, it is not the policy adopted by the EOUST and is not relevant to the question at bar since Myers has not been determined by the EOUST or anyone else to have engaged in such conduct. In fact, as previously mentioned, the only determination to date was rendered by the U.S. District Court that Myers did not violate the law.

The memorandum dated July 10, 1992 is rife with similar, and in some cases identical, examples of irrelevant statements of undisputed principles of law, nonsensical sentences and conclusory statements.

The first paragraph of the memorandum describes the issue as whether trust funds should be used to pay an award for employment discrimination and the legal costs associated therewith. As stated before, that is not the issue in this case.

The second paragraph is a long-winded version of this court's premise that the starting point in the analysis is the language of the statute. Unfortunately, however, the language of the statute is never recited.

The second page begins with an analysis under the heading of "Statutory Framework." The first paragraph therein begins with a recitation of the chapter 13 process. This paragraph also includes a footnote with a completely irrelevant statement of the eligibility requirements for chapter 13 relief. The second paragraph states the obvious: That monies paid to a trustee are held in trust for the benefit of certain beneficiaries. This paragraph also includes a footnote that states, without any statutory or regulatory reference or legal analysis, one of the ultimate questions to be decided, that is:

> By delegation from the Attorney General, the Director, Executive Office for United States Trustees, has responsibility to establish the level of compensation *and expenses.* (Emphasis added.)

The third paragraph of the "Statutory Framework" part of the memorandum, for the first time, refers to 28 U.S.C. § 586(e)(1). Unfortunately, however, the author again fails to quote the language thereof.

The fourth paragraph finally refers to the language of § 586(e)(2)(B)(ii). Again, however, the author fails to quote the language of the statute. The exact language of § 586(e)(2) follows:

> Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States Trustee shall deposit in the United States Trustee System Fund—

> (A) any amount by which the actual compensation of such individual exceeds 5 per centum upon all payments received under plans in cases under Chapter 12 or 13 of title 11 for which such individual serves as standing trustee; and

> (B) any amount by which the percentage for all such cases exceeds—

> (i) such individual's actual compensation for such cases, as adjusted under subparagraph (A) of paragraph (1); plus

> (ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases. Subject to the approval of the Attorney General, any or all of the interest earned from the deposit of payments under plans by such individual may be utilized to pay actual, necessary expenses without regard to the percentage limitation contained in subparagraph (d)(1)(B) of this section.

The failure to analyze the exact language of the statute leads the author of the July 10, 1992 memo to state that:

> The extent of expenses the standing trustee may receive is governed by the "actual, necessary" language of § 586(e)(1) and § 586(e)(2)(B)(ii).

This statement is incorrect. First, a standing trustee does not "receive" expenses; a standing trustee "incurs" expenses. Second § 586(e)(2) provides that the standing trustee shall pay to the United States Trustee the amount by which the payments received under chapter 12 or 13 plans exceed his compensation and "actual, necessary" expenses. This payment to the U.S. Trustee under § 586(e)(2) may therefore be thought of as a payment of surplus funds. Thus, the fourth paragraph of this section of the EOUST's memorandum imprecisely paraphrases the statutory language. The fourth paragraph also lacks any meaningful analysis of the statutory scheme except to state that the terms "actual, necessary" must be terms of restriction rather than expansion.

It is important to note at this point that the July 10, 1992 memorandum has so far failed to quote the relevant statutory language and has engaged in virtually no logical analysis thereof. Despite this fact, the

fifth and final paragraph of the "Statutory Framework" section of the memorandum states:

In view of the statutory language describing the type of expenses, and requiring expenses to relate directly to the administration of cases, we conclude that trust monies may not be used to pay or settle employment discrimination claims. As set forth below, the statutory language reflects important policies that demand such a view.

Again, the EOUST's statement is incorrect. The statutory language in question does not require the expenses to "relate directly to the administration of cases." Since the statutory language was never quoted, however, this misstatement of the statute was possible.

The next section of the memorandum is entitled "Case Law" and cites therein three cases. The first two cases are cited for the proposition that "courts generally allow reimbursement for expenses incurred to render benefit to a specific case." The two cases refer to the reimbursement of postage and transcription fees incurred in chapter 7 and 11 cases. While this may be a correct statement of the law, it is not relevant to the issue at hand. No one argues that the costs associated with a former employee's lawsuit are the same as the transcription fees and postage charges incurred in administering an individual estate under chapter 7 or 11. Thus, these two case citations are pointless.

The next paragraph of this section begins with a recognition that the preceding paragraph was irrelevant and that the parallels between chapter 7 and 11 cases and chapter 13 cases "are difficult." The only other case cited in the "Case Law" section of the memorandum is cited for the undisputed proposition that "the costs of administration are distributed across all cases." Rather than supporting the EOUST's position, this fact supports Myers's position.

Thus, the entire section entitled "Case Law" contains no citation to or analysis of any opinions that support the conclusion reached by the EOUST.

Page 4 of the memorandum begins with a section entitled "Standing Trustee as a Fiduciary." The first two paragraphs of this section consist of an irrelevant analysis of the nature of funds paid to a standing trustee. The third paragraph begins with the previously mentioned sentence about the trust monies being separate and distinct from the trustee and concludes with a quote from a case to the effect that a trustee who fails to discharge a duty to the trust may be surcharged. Again, this may be correct but is irrelevant in this case since Myers did not fail to discharge any duty to the trust.

The fourth and final paragraph of this section begins with the meaningless introductory phrase, "To one degree or another" and reads: "To one degree or another the law has always held the trustee accountable and personally responsible for the administration of the trust...." The reader is left to wonder to what degree the law does hold trustees personally accountable. Again, no one disputes that trustees are accountable for the administration of the trust. The quoted statement is simply irrelevant.

This paragraph also recites that trustees should take care not to expend greater funds than are reasonably necessary in administering the trust. Based on this undisputed and irrelevant black letter law, the author of the July 10, 1992 memorandum concludes:

The law's historical perspective has been to protect the trust corpus, even at the risk of exposing the trustee to liability. Our conclusion that employment discrimination claims are not "actual, necessary expenses" is consistent with this perspective.

This conclusion is based on no previous citation for the proposition that a trust corpus is to be protected even at the expense of the trustee. Further, the issue in this case is not whether "employment discrimination claims" are actual, necessary expenses. Claims are not expenses. The issue in this case is whether the *expenses* incurred in defending such a claim are "actual, necessary" expenses under the stat-

ute. The quoted statement is wholly conclusory and unsupported by any analysis.

The next section of the memorandum, beginning on page 5, is entitled "Role of the Standing Trustee." The first paragraph of this section concludes that standing trustees are not employees of the United States and "are afforded wide discretion in carrying out their responsibilities." The relevance of this statement to the question at hand is never explained and escapes the court.

The second paragraph of this section includes the following sentence:

The trust does not carry out the Code's responsibilities, the standing trustee does.

Based on this observation, the paragraph concludes that claims of those arising from employment related to trust administration arise solely against the trustee.

Again, one wonders if the author of the quoted sentence understands that a trust is a legal fiction similar to a corporation that has no physical existence. Obviously, trusts and corporations cannot act without human intervention. It does not necessarily follow from this fact that a trust can never be held accountable for the acts of its trustee. Certainly, no authority is cited for this proposition. Again, it must be remembered that Myers has not been determined to have committed any wrongful act.

This second paragraph of this section also incorrectly states that the salaries of individuals assisting the standing "are determined by the standing trustee, as employer." As previously mentioned, this contradicts the Handbook for Chapter 13 trustees published by the EOUST which purports to limit the salaries of such individuals assisting the Chapter 13 trustee.

Page 6 of the July 10, 1992 memorandum is entitled "Equal Employment Opportunity Laws." This section discusses that public policy dictates discouraging individuals from violating the law. While this can hardly be disputed, it is irrelevant to the issue at bar since Myers was determined not to have violated the law.

The second section on page 6 of the memorandum is entitled "Standing Trustee as Compared to Private Enterprise." This section notes that everyone is subject to potential frivolous lawsuits and that the standing trustee's compensation and expenses are "established by a regulatory agency." The author fails to recognize, however, that these facts argue in favor of treating the costs associated with such lawsuits as actual, necessary expenses, as discussed above.

The second paragraph of this section recognizes that "elements of unfairness flow from" the rule enunciated in the memorandum. This unfair result is justified, however, with the following conclusory sentence:

The law, in establishing the compensation standing trustees may receive as well as the expenses that will be allowed, has allocated risk and the exposure to liability.

This is simply not the case. The law does not directly answer what expenses will be allowed. If it did, there would be no need for this court's intervention. No part of the memorandum that precedes this sentence supports the conclusion that the law has allocated the risk of exposure to defense costs to the standing trustee. In fact, this court, which is primarily engaging in determining the state of the law, disagrees with that conclusion. Thus, this unsupported and conclusory statement is not the least persuasive.

The final section of the memorandum is entitled "Summary." The "Summary" adds nothing to the previous arguments and, not surprisingly, concludes that expenses related to employment discrimination claims and defense costs may not be allowed in this context.

"Arbitrary and capricious" action has been described in numerous ways. Common to all the descriptions is the concept that the action is not based on reason or logic. See, e.g., *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). The July 10, 1992 memorandum and the July 20, 1992 letter to Myers contain no logical basis for the action tak-

en. This is largely due to the EOUST's failure to recognize the difference between allegations of wrongdoing and actual wrongdoing. In sum, the July 10, 1992 memorandum and the July 20, 1992 letter represent agency action that is so out of touch with the issues presented for determination and so lacking in legal logic and reason that they constitute classic examples of "arbitrary and capricious" action.

CONCLUSION

In conclusion, this court holds that the determination of "actual, necessary expenses" under 28 U.S.C. § 586(e)(2) is not left to the Attorney General (or his delegate) but, in the absence of agreement, to judicial determination. The court concludes that it is authorized to make this determination and that the expenses in question are "actual, necessary expenses" since it has been determined by a court of competent jurisdiction that Myers did not violate the law.

Even if the determination of "actual, necessary expenses" under 28 U.S.C. § 586(e)(2) were appropriately made in the first instance by the EOUST, its determination in this case was arbitrary and capricious and cannot stand.

The EOUST has not objected to the amount of the expenses incurred as being unreasonable. It is not clear whether this information has been requested by or provided to the EOUST or the AUST. Thus, Myers is hereby directed to promptly advise the Court, the EOUST and AUST in writing of the expenses in question. If the EOUST or the AUST fail to file written objections thereto with the court within 20 days after service of the information from Myers, Myers may submit an order authorizing the trustee to withhold sufficient sums from the funds that would otherwise constitute "surplus" under 28 U.S.C. § 586(e)(2) as are necessary to meet the actual expenses incurred in the defense of the claim discussed herein. To the extent the trustee has expended personal funds in this regard, the order may provide for reimbursement of the actual expenses incurred in such defense.

1. The letter was incorrectly dated May instead

EXHIBIT 1

U.S. Department of Justice

Executive Office for United States Trustees

Washington, D.C. 20530

July 20, 1992

VIA FEDERAL EXPRESS

Paul S. Cosgrove, Esq.

Gardner, Cosgrove & Gardner

121 S.W. Salmon Street, Suite 1400

Portland, Oregon 97204–2924

Re: Robert W. Myers, Chapter 13 Standing Trustee

Dear Mr. Cosgrove:

By way of this letter, I wish to formally respond to Mr. Myers' request to use expense funds to pay the cost of defending an age discrimination action that has been brought by a former employee. I also wanted to clarify the United States Trustee's request for turnover of surplus funds.

First, the United States Trustee Program has determined not to authorize Mr. Myers' request for reimbursement. For purposes of reaching our decision, we have considered Ms. Theresa Miller's letters of May 23, 1992[1] and June 17, 1992, to Assistant United States Trustee Pam Griffith forwarding documents and requesting permission, on behalf of Mr. Myers, to pay costs arising in connection with the age discrimination action brought by Ms. Vicki L. Barnett (Barnett v. Myers, USDC, D.Ore., Case No. CV–92–183–FR). We have also considered the motion filed in the United States Bankruptcy Court for the District of Oregon encaptioned In re Robert Myers, Trustee, Misc. Proceeding No. 392–304–H.

This will also apprise you of the fact that the Program has recently adopted a statement of position with regards to the reimbursement of expenses related to employment discrimination claims. See attached memorandum dated July 10, 1992. The

of March.

position enunciated there also guides our determination in Mr. Myers' case.

The overall position of the United States Trustee Program as well as the decision in response to Mr. Myers' request were not easily reached, and the Program had to consider a variety of factors. Ultimately, the decision in Mr. Myers' case is based on the considerations set forth in the policy statement as well as such additional considerations as are set forth in this letter.

We realize an underlying premise of the standing trustee concept is that the costs of administration are distributed across all cases. That expenses can be distributed across all cases, however, does not mean that any expense can be so distributed. More importantly, the presence of substantial monies in the trust fund does not alter or lend support to a more expansive interpretation of what constitute "actual, necessary" expenses under 28 U.S.C. § 586(e).

The monies held in trust by a standing trustee are separate and distinct from the standing trustee. The standing trustee is a fiduciary responsible for the trust funds. The trust does not carry out the duties set forth in the Bankruptcy Code, the standing trustee does. In this sense, individuals assisting the standing trustee are employees not of the trust, but of the standing trustee. Their responsibilities, working hours, conditions, and salary, none of which are unique to the administration of bankruptcy cases, are determined by the standing trustee, as employer. Their relationship is with the standing trustee, not the trust. Any allegations of discriminatory conduct arising in that employment relationship exceeds the bounds of the trustee's primary duty, which is to administer bankruptcy cases, and trust funds should not be expended to relieve an employer of personal liability for such conduct. To hold otherwise would render the trust funds an overall insurance policy for discriminatory conduct by standing trustees, contrary to the trustees' fiduciary duties and contrary public policy.

With regard to the United States Trustee's demand for payment of surplus, Mr. Myers' audited annual report for fiscal years ending September 30, 1991 and 1990 reflected a total surplus of $146,530. Pursuant to Program policy, he was allowed to carry forward surplus to the extent it did not exceed 25% of his actual necessary expenses for FY 1991. In Mr. Myers' circumstance, this resulted in $132,848 of the total surplus which could be carried forward. The difference of $13,682 was to be turned over to the United States Trustee unless Mr. Myers agreed to reduce his percentage fee for the benefit of debtors and creditors. If he did so, then Mr. Myers could retain surplus above and beyond the 25% level for purposes of paying actual, necessary expenses. At this juncture, Mr. Myers has not reduced his percentage fee, therefore, surplus in the amount of $13,682 remains payable to the United States Trustee.

It was unclear from the motion you filed on behalf of Mr. Myers whether the entire surplus or simply the portion above 25% was at issue. After reviewing the Assistant United States Trustee's letter (Exhibit A to your motion), I wanted to clarify that our request for turnover pertained to the $13,682 amount. Although the policy statement does not deal directly with the use of surplus funds, in keeping with the statement, we cannot allow payment of the defense costs from surplus funds. As you know, surplus is ultimately payable to the United States Trustee for deposit in the United States Trustee System Fund under 28 U.S.C. § 586(e)(2)(B).

Please feel free to contact me in writing if you have any questions regarding this matter.

Sincerely,
/s/ Martha L. Davis
Martha L. Davis
General Counsel

Enclosure

cc: Mary Jo Heston

United States Trustee

Region 18

EXHIBIT 2

U.S. Department of Justice

Executive Office for United
States Trustees

Office of the Director
Washington, D.C. 20530

July 10, 1992

MEMORANDUM

TO: All United States Trustees

FROM: Martha L. Davis
General Counsel

SUBJECT: Payment of Employment Discrimination Claims from Standing Trustee Trust Accounts

This memorandum addresses the question of whether an award for damages for employment discrimination, as well as the attorney fees associated with defending such a lawsuit, may be paid from trust funds [1] held by a standing chapter 13 trustee. An ancillary question is whether these monies may be used for a settlement of such an action. Our view is that chapter 13 trust funds may not be used for such purposes.

The response to the question presented must be drawn from the statutory language regarding the administration of bankruptcy estates. The protections and obligations of the debtor, the responsibilities of private trustees and government agencies, and the substantive law the court must interpret, are premised on the law enacted by Congress. Any review must be limited to what the law states and to authority that lends to the interpretation of the language. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1025, 1030 (1989). A statute must "be interpreted to avoid untenable distinctions and reasonable results," *American Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1991).

## STATUTORY FRAMEWORK

Under chapter 13 of the Bankruptcy Code, 11 U.S.C. 1301 *et seq.*, subsequent to filing a petition, a debtor [2] proposes to the court a plan to repay all or part of his debts. Payments by debtors are made to the standing trustee. The standing trustee is appointed by the United States Trustee to administer all chapter 13 cases in a particular geographic area. 28 U.S.C. 586(b).

Through the payments made by the debtor, a trust is established. The trust's beneficiaries, the creditors, receive the monies in the trust in accordance with the repayment plans approved by the court. The standing trustee, as fiduciary for the trust, collects the monies, ensures the safe keeping of the trust fund, makes disbursements to the beneficiaries, and performs the duties set forth at 11 U.S.C. 1302(b). The standing trustee receives compensation and expenses from the trust at levels determined by the Attorney General.[3]

Section 586(e)(1) of title 28, U.S.C., authorizes the Attorney General to establish a percentage fee to be assessed against payments made to the standing trustee by debtors. The fee has two purposes: to compensate the standing trustee and to provide for the "actual, necessary expenses" incurred in administering chapter 13 bankruptcy estates. By fixing the percentage fee to be assessed, the amount of monies a standing trustee receives for compensation and expenses is determined.

The extent of expenses the standing trustee may receive is governed by the "actual, necessary" language of § 586(e)(1) and § 586(e)(2)(B)(ii). The language itself is that of limitation. Instead of simply authorizing the payment of "expenses" from the trust, the law requires that they be "actual and necessary." Moreover, the compensation and expenses incurred must

---

1. Trust funds are defined to include the monies maintained in the pre-confirmation account, expense account and confirmation account of the standing trustee.

2. Under the terms of 11 U.S.C. 109(e), only debtors with unsecured debts of less than $100,000, and secured debts of less than $350,000 are

eligible under the provisions of chapter 13 of the Bankruptcy Code.

3. By delegation from the Attorney General, the Director, Executive Office for United States Trustees, has responsibility to establish the level of compensation and expenses.

relate to efforts associated with the actual administration of estates. Section 586(e)(2)(B), which addresses circumstances when the fees collected exceed compensation and expenses, makes this clear by limiting "actual, necessary expenses" to those costs "incurred by ... (the) standing trustee in such cases" that he administers. Section 586(e)(1)(B)(i), in establishing a ceiling of 10% for the total compensation and expenses, further indicates the confined nature of the expenses that may be received.

In view of the statutory language describing the type of expenses, and requiring expenses to relate directly to the administration of cases, we conclude that trust monies may not be used to pay or settle employment discrimination claims. As set forth below, the statutory language reflects important policies that demand such a view.

### CASE LAW

That expenses are confined to those directly related to administering estates is reflected in the case law. The language of § 586(e) is consistent with 11 U.S.C. § 330(a)(2), which allows professionals and trustees to seek "reimbursement for the actual, necessary expenses" in chapter 7 and chapter 11 cases. Although the cases are not totally uniform, courts generally allow reimbursement for expenses incurred to render benefit to a specific case. *See e.g., In re Bible Deliverance Evangelistic Church,* 39 B.R. 768 (Bankr.E.D.Pa.1984) (filing fees, witness fees and transcription expenses allowed); *In re S.T.N. Enterprises,* 70 B.R. 823 (Bankr.D.Vt.1987) (extraordinary postage expenses allowed). The tenor of the case law reflects a restrictive rather than expansive view of "actual, necessary" expenses.

While it is clear that chapter 7 and chapter 11 case law construing § 330(b) provides no support for the payment of employment discrimination actions, the parallels to chapter 13 are difficult. Chapters 7 and 11 case law is premised on the concept of expenses benefitting a particular estate. The task of quantifying benefit is virtually impossible in chapter 13 cases. The underlying premise of the standing trustee is that the costs of administration are distributed across all cases. *In re Savage,* 67 B.R. 700, 707 (D.R.I.1986). That expenses are spread across all cases does not mean that any expense can be so distributed, however. More importantly, the presence of substantial monies in the trust fund does not alter or give support to a more expansive perspective of what constitutes an "actual, necessary" expense.

### STANDING TRUSTEE
### AS A FIDUCIARY

The statutory limitation on expenses that can be paid from trust funds emanates from the fiduciary nature of the standing trustee's responsibility. The funds available to pay the trustee's compensation and expenses flow from plan payments. The funds never lose their status of trust monies until paid. Monies collected and deposited into the "expense trust account" are in the custody of the standing trustee, but do not constitute property of the standing trustee, except to the degree that accrued compensation has remained in the trust account. A creditor of the trustee may have an equitable remedy to proceed directly against the trust, but only to the extent that the trustee has an interest, such as accrued compensation. *See, United States v. Safeco Insurance Co.,* 870 F.2d 338 (6th Cir.1989).

The appointment of a standing trustee states that upon death or termination of the standing trustee "neither he nor his heirs, administrators or assigns ... shall have any expense right, claim, title or demand upon any commissions or expenses." If the trustee ceases to remain in office, neither he nor his estate has any claim to compensation or expenses that accrue thereafter. The expense trust account transfers from successor to successor and ensures continuity in plan administration as it is available to pay the successor's compensation and expenses. *See, Flournoy v. Hershner,* 68 B.R. 165, 169 (M.D.Ga.1986). *See also, United States v. Safeco Insurance Company of America,* 870 F.2d 338 (6th Cir.1989) (creditor of standing trustee

entitled to only that amount which represented compensation for period which standing trustee worked and not the entire amount collected by way of the percentage fee).

Trust monies are separate and distinct from the standing trustee. The law is emphatic in distinguishing the actions of a trustee and liability that may be incurred, from that which accrues to the trust. Trust monies do not exist to serve the trustee. "Where the trustee is negligent or willful and fails to meet the standard of care required of him, he is liable for loss.... It is not necessary to a surcharge of a trustee's accounts that he shall have been guilty of fraud or intentional wrongdoing. It is sufficient that the trustee has failed to discharge a duty required by the law." *In re Johnson*, 518 F.2d 246, 251 (10th Cir.), *cert. denied*, 423 U.S. 893 (1975).

To one degree or another the law has always held the trustee accountable and personally responsible for the administration of the trust, even though under terms of the trust, the trustee may be entitled to reimbursement for actual, necessary expenses. *See, In re Gorski*, 766 F.2d 723, 726 (2d Cir.1985). Thus, for example, when a trustee is authorized to incur an expense, he maintains a duty to exercise reasonable care as a ordinary, prudent man not to incur a greater expense than is reasonable under the circumstances. Restatement (Second) of Trusts, § 246. The law's historical perspective has been to protect the trust corpus, even at the risk of exposing the trustee to liability. Our conclusion that employment discrimination claims are not "actual, necessary expenses" is consistent with this perspective.

## ROLE OF THE STANDING TRUSTEE

Beyond the statutory restriction that is founded on the fiduciary nature of the standing trustee's responsibilities is the character of the standing trustee's relationship to the system as a whole. The standing trustee is not an employee of the United States. *See, e.g., Wells v. United States*, 98 B.R. 806 (N.D.Ill.1989); *Southern Tier Energy Products, Inc.*, 109 B.R. 96 (Bankr.M.D.Penn.1989); *Kuchan v. Heston*, No. 91–5465(T) (W.D.Wash., May 5, 1992). The status is more akin to that of an independent contractor. *Matter of Chapter 13, Pending and Future Cases*, 19 B.R. 713, 716 (Bankr.W.D.Wa.1982). The standing trustee is obligated to administer chapter 13 cases consistent with the duties set forth in 11 U.S.C. 1302. While other laws impose obligations and responsibilities on the public in general, and therefore on the standing trustee, the Bankruptcy Code does not delineate specific efforts the standing trustee must undertake. Subject to overall efficiency and effectiveness standards, standing trustees are afforded wide discretion in carrying out their responsibilities.

As stated, the standing trustee is the fiduciary responsible for the trust funds. The trust does not carry out the Code's responsibilities, the standing trustee does. In this sense, individuals assisting the standing trustee are employees not of the trust, but of the standing trustee. Their responsibilities, working hours, conditions, and salary, none of which are unique to the administration of bankruptcy cases, are determined by the standing trustee, as employer. The relationship is with the standing trustee, not the trust. Whether involving the payment of employment taxes, adhering to standards required for a safe working environment, conforming to minimum wage and hour laws, or complying with the laws regarding equal employment opportunity, and dispute is with the standing trustee. Any remedy must come from the standing trustee, not the trust fund.

## EQUAL EMPLOYMENT OPPORTUNITY LAWS

Beyond the statutory language, the inherent limitations on a fiduciary's use of trust funds, and the role of the standing trustee as an independent contractor, is the public policy at stake in the laws pertaining to equal employment. Congress has made clear the responsibilities employers have in ensuring an environment where fairness and equal opportunity pervade. *See, e.g.,*

Civil Rights Act of 1964, title VII, 42 U.S.C. 2000e,; Equal Pay Act of 1963, 29 U.S.C. 206; and Age Discrimination in Employ-ment Act of 1967, 29 U.S.C. 621. Similar statutes have been enacted by the states.

A standing trustee's obligation in this area is clear. Beyond federal and state fair employment laws, the qualifications re-quired by the United States Trustee Pro-gram set forth in 28 C.F.R. § 58.3(b)(4) demand standing trustees to be free of prejudice or bias. Similarly, the Program's Handbook for Chapter 13 Standing Trust-ees admonishes trustees to engage in non-discriminatory employment practices. En-gaging in discriminatory conduct is far out-side any parameters of administering bank-ruptcy cases. Trust funds should not be expended to relieve an employer of the liability. To hold otherwise would render the trust funds an overall insurance policy for any action of the standing trustee.

## STANDING TRUSTEE AS COMPARED TO PRIVATE ENTERPRISE

We realize that the premise of this mem-orandum disrupts the expectations of those who believe that "actual, necessary ex-penses" should be given a broad expanse. Certainly, in administering thousands of bankruptcy cases, the standing trustee en-counters a range of circumstances. The standing trustee has attributes of a busi-ness· endeavor, including being subject to frivolous lawsuits. What is accorded a nor-mal expense in a business environment, however, does not necessarily follow in the standing trustee context. The standing trustee is distinguished in several respects. A normal business entity does not have its compensation and expenses established by a regulatory agency. Its overall cost and ability to remain viable is dependent on the market place.

Additionally, it may be that the risks of financial exposure is greater for the stand-ing trustee as compared to traditional cor-porate structure's protection of its princi-pals. We are well aware that the burden of lawsuits, particularly frivolous ones, falls on the standing trustee as an individu-al and that elements of unfairness flow from this result. That varied risks and exposure accrue to different entities is a result of the structure created by the law. The law, in establishing the compensation standing trustees may receive as well as the expenses that will be allowed, has allo-cated risk and the exposure to liability.

## SUMMARY

In summary, we are of the view that the statutory language itself, the historic limi-tation on a fiduciary's access to trust funds, the distinction between the trust fund and the standing trustee's actions, and the important public policy found in the equal employment laws, lead to the conclu-sion that chapter 13 trust funds cannot be used to pay employment discrimination claims. For these same reasons, we do not think that trust funds may be used for the defense of such actions. For trust monies to be expended to settle or pay a discrimi-nation suit against the standing trustee crosses the line from an expenditure in fulfillment of the trust's purpose to an expenditure for the standing trustee as in-dividual. We do not think that the Con-gress, in enacting 28 U.S.C. 586, envisioned such a possibility.